STATE of Missouri, Plaintiff-Respondent,

v.

Earl CRISP, Defendant-Appellant.

No. 12080.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 30, 1981.

Motion for Rehearing or to Transfer to Supreme Court Overruled Nov. 18, 1981.

Application to Transfer Denied Jan. 18, 1982.

John D. Ashcroft, Atty. Gen., Steven H. Akre, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

John E. Price, Woolsey, Fisher, Whiteaker, McDonald & Ansley, Springfield, for defendant-appellant.

PER CURIAM.

Defendant, Earl Crisp, was charged by information with kidnapping for the purpose of committing forcible rape (Count I) in violation of § 565.110,[1] and with the crime of forcible rape, in the course of which defendant displayed a deadly weapon in a threatening manner (Count II) in violation of § 566.030. Defendant waived jury, after which he was court-tried, convicted and sentenced by the trial court to 15 years' imprisonment on each count, with the sentences to run concurrently. This appeal followed.

Defendant's first two points are that the trial court erred in denying his motion for judgment of acquittal on both counts filed at the close of all of the evidence. As to the kidnapping charge, he claims that the evidence was insufficient to prove defendant removed Gina Shea from her home a) without her consent, or b) for the purpose of facilitating the crime of rape. As to the rape charge, he claims that the evidence was insufficient to prove that defendant had sexual intercourse with Ms. Shea without her consent by the use of forcible compulsion. Since these two points are bottomed on claims of insufficient evidence, we review the evidence in the light most favorable to the state, accept all substantial evidence and all legitimate inferences fairly drawn therefrom that tend to support the verdict, and reject all contrary or contradictory evidence. *State v. Petrechko*, 486 S.W.2d 217, 218 (Mo.1972).

On October 5, 1979, Gina Shea was residing in an apartment in Mountain Grove, Missouri. Other members of the household were James Shannon (her live-in boyfriend) and their three-year-old daughter. James and Gina had lived together about four years, with part of that time being spent in Liberal, Kansas, before they moved to Mountain Grove. Crisp is an uncle of Shannon's by marriage. Randy Reed is an acquaintance of Crisp, Shannon and Gina. They had known one another since high school days.

In 1976, Gina, Shannon, Reed and defendant were living in the same house in Liberal, Kansas. While living there, Gina had sexual intercourse with Crisp and Reed, as well as with Shannon. Gina stayed in Liberal for a month or more, and then returned to Missouri. The three men eventually followed, and Shannon sat up housekeeping with Gina.

On the day in question, defendant's wife had left him, he was upset, and defendant and Reed started drinking. They drank throughout the afternoon and evening and, in the words of both, were drunk. At about 11 p. m., they decided to go to the apart-

1. Unless otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1978, V.A.M.S.

ment of Gina and Shannon. On their way to the apartment, Crisp told Reed that he was "going to get him some." When they arrived, Shannon, Gina and the little girl were in bed. Reed or Crisp knocked on the door and Shannon got up, went to the door and let them in. Crisp and Reed asked Shannon to go with them and drink some beer. Shannon refused and returned to the bedroom he shared with Gina. Gina was still in bed, clad in a tee shirt, bra and underwear. Crisp and Reed kept asking Shannon to go with them to drink some beer. Shannon still refused as he had to work the next day.

An argument ensued, with Shannon being accused of sending Crisp to the penitentiary at an earlier date. Reed then hit Shannon in the jaw. Gina was still in bed and told Crisp and Reed to get out. Shannon went into the other bedroom and closed the door. Gina wrapped a blanket around herself and went into the living room. Crisp and Reed came into the living room and told Gina that she was going with them to which Gina replied, "No." Crisp told her to get dressed. Gina went to the bedroom, put on a pair of blue jeans and returned to the living room. Gina was crying. Crisp had a pocket knife which he kept sticking in the bedroom door. Gina was screaming and crying. Crisp approached her with the knife and told her to quit screaming. Crisp and Reed then went back to the bedroom door, battered it open and told Shannon to come out, which he did.

Crisp told Shannon they were taking Gina with them and that Shannon had better not call the cops, and if he did, they would kill him. Crisp made Gina go with him and Reed. Crisp kept the knife at Gina's back as they went out the front door. Crisp then handed the knife to Reed and told him to use it on Shannon if he came out. After the three left, Shannon called the police.

The three people got in Crisp's pickup truck. Crisp was driving. Reed then drove to a country road near Mountain Grove and stopped. During the trip, Crisp said to Gina "that they needed some pussy." Gina told him she did not want to do it and wanted to go home. Crisp told her she was going to and asked her if he was going to have to use the knife. Crisp told Reed to get out of the truck and he did so. Gina was crying again at this time.

Crisp removed Gina's clothes, made her lie down in the seat of the truck and had sexual intercourse with her against her will. She kept telling him to stop, but he would not. Crisp was unable to achieve an orgasm. Crisp then took Gina out of the truck and made her lie down on her stomach. Reed got back into the truck, as he was cold. Crisp then proceeded to have anal intercourse with Gina against her will. She submitted to the sexual acts because she was afraid that if she did not Crisp would stab her with the knife.

They got back into the truck and Crisp drove back to Gina's place and let her out. Crisp then told her to meet him at the "Town and Country" the next day at 4:30 and, if she did not, that Crisp and "some other guys would hold Shannon down and make him watch" what Crisp did to Gina. When Gina came back in the house, she was very upset. Shannon asked her what happened and she said Crisp had raped her and she started crying. Defendant was thereafter charged with kidnapping and rape.

A person commits the crime of kidnapping if he unlawfully removes another person from the place where he is found for the purpose of facilitating the commission of any felony. § 565.110.1(4). A person commits rape if he had sexual intercourse with another person to whom he is not married, without that person's consent, by use of forcible compulsion. § 566.030.1(1). A person acts purposely, or with purpose, with respect to his conduct or to a result thereof when it is his conscious object to engage in that conduct or to cause that result. § 562.016.2. A person who is intoxicated is criminally responsible for his conduct unless such condition negatives the existence of the mental state of purpose or knowledge when such mental states are elements of the offense charged. § 562.076.-1(1)

■ We hold that the evidence outlined above was sufficient to prove all of the elements required in the crimes of kidnapping and rape, and was sufficient to sustain both convictions. It is apparent that the evidence sufficiently establishes the defendant removed Ms. Shea from her apartment without her consent and her lack of consent resulted from forcible compulsion applied by defendant, and her removal was for the purpose of facilitating the rape of Ms. Shea. It is equally apparent that the evidence is sufficient to establish the crime of rape. It was undisputed that defendant had sexual intercourse with Ms. Shea on the night in question. His defense to the rape charge was consent. There was sufficient evidence to rebut such claim.

■ His defenses to the kidnapping charge were consent and that his intoxication was to such a degree that it negated the mental state of "purpose" required as an element of the crime of kidnapping. Here again, there was sufficient evidence to rebut such claims. The evidence indicates that defendant may have been drunk at the time of the occurrence, but not to the point that he did not know what he was doing. This being so, he should not be allowed to hide behind a bottle of booze to excuse his criminal acts. Defendant presents a great hue and cry in his brief about the immorality of the complaining witness, and her prior sexual dalliances with defendant and others. We are not here to judge morals. Prostitutes, as well as virgins, and those of all shades in between, are entitled to the sanctity of their own bodies, and all of them have the right to grant or to withhold their sexual favors, as they see fit, free from the indignity of force or compulsion through fear. Points one and two are denied.

Defendant's remaining point is that the trial court erred in excluding testimony of Ms. Shea on her cross-examination as to her prior sexual conduct with defendant because a) § 491.015.1(1), upon which the court relied in excluding the evidence, is unconstitutional on its face, as it denied defendant the right to confront witnesses as guaranteed by the United States and Missouri constitutions, and b) her prior sexual relations with defendant were reasonably contemporaneous with the date of the alleged crime in that the parties had a continuing relationship during the period intervening between these events.

■ As to the claim of unconstitutionality of § 491.015.1(1), the record indicates that no such contention was made to the trial court. A constitutional argument, which is not specially presented to the trial court, will not be considered on appeal. *State v. Holley*, 488 S.W.2d 925, 927 (Mo. App.1972). We recognize that such arguments may be reviewed under the plain error rule, Rule 30.20, when raised for the first time in defendant's brief, but such review is discretionary. We decline to make such a review as there a) is no showing in the record that any ruling or action of the trial court, in supposedly limiting the scope of cross-examination of Ms. Shea, resulted in a miscarriage of justice or manifest injustice, and b) the constitutionality of § 491.015 cannot be determined by this court. Mo.Const. Art. V, § 3.

■ The record does not bear out defendant's claim that the trial court erred in excluding testimony from Ms. Shea on cross-examination regarding her prior sexual relations with defendant. During cross-examination of Ms. Shea, defense counsel, in attacking her testimony that she did not know what Crisp and Reed were going to do when they made her get in the pickup truck, asked if she had had sexual intercourse with Crisp and Reed in the past. Her answer was, "Yes." The prosecutor objected on the grounds that defendant needed to make an offer of proof so that the trial court could determine "what use the evidence would have." The objection was sustained and her "yes" answers were ordered stricken. Defense counsel renewed that line of inquiry, and the prosecutor's objections were again sustained. Finally, during a bench conference, the prosecuting attorney observed that § 491.015 prevents any evidence of prior sexual conduct unless the testimony fit one of the exceptions to prohibition of such testimony. Defense

counsel said he was trying to show consent on prior occasions. The court told defense counsel he would have to lay a foundation by showing the dates of the prior sexual intercourse, and if the dates of such occurrences were not reasonably contemporaneous with the date of the alleged rape, such testimony was not admissible.

Ms. Shea then testified that she had sexual intercourse with Crisp on two occasions in the state of Kansas in 1976, but had not had intercourse with him from that time until October 5, 1979. No objection was made to the question or answer. Later, defense counsel made an offer of proof. The offer and the court's ruling were as follows:

"Mr. Wendt: I now offer to—as an offer of proof going to the question of consent to show prior acts of intercourse solely for the purpose of getting to this issue of consent, and it's defendant's position that these incidents are not too remote in time because of the relationship—continuing relationship of the parties and their age, and the additional fact that this young lady is living in sin with another man in any event.

So, that I do want to make that offer.

Mr. Moody: Well, Your Honor, this isn't a case where we are required to prove the chaste character of the defendant [sic], and as far as whether it's reasonably contemporaneous I think that's a decision for you to make, and three years, approximately three years, is not reasonably contemporaneous, especially under the testimony which we have heard here today.

Mr. Wendt: I just wanted to make the offer of proof and let the Court decide.

The court: Offer of proof rejected and objection still sustained.

Mr. Wendt: Thank you, Your Honor."

Thereafter, defense counsel offered the same evidence that had been rejected before (Gina's past sexual conduct with Crisp and Reed) for the purpose of impeachment. The court said it would hear the evidence. Ms. Shea then testified that she had voluntary sexual intercourse with Crisp on two

prior occasions, and with Reed on one prior occasion. She denied any other sexual conduct with either. All of this testimony went in without objection.

During a bench conference, the trial judge then observed that the state had "half-heartedly consented the evidence come in", and told defense counsel to proceed. Defense counsel then asked Ms. Shea about prior sexual intercourse with Reed and she admitted it. On redirect, she affirmed her past sexual intercourse with Crisp on two occasions.

During defendant's case, Reed testified that he had sexual intercourse with Gina on 15 or more occasions, and that she had consented on each occasion. Crisp testified that he had sexual intercourse on four or five occasions, prior to October 5, 1979, in Kansas and in Missouri. None of their testimony was objected to by the state. Crisp also testified that he had sexual intercourse with Ms. Shea on the night of the alleged rape, but that she consented to it.

Section 491.015, popularly known as the Rape Shield Law, provides that the prosecuting witness in a rape case may not be interrogated as to prior sexual conduct, except that evidence of the sexual conduct of the complaining witness with the defendant is admissible to prove consent if the evidence is reasonably contemporaneous with the date of the alleged crime.

We doubt if the evidence of Gina's voluntary sexual conduct with defendant in 1976 in the state of Kansas was "reasonably contemporaneous" with the sexual intercourse between Gina and Crisp on October 5, 1979. Reasonably means within the bounds of common sense. Contemporaneous means originating, or happening, during the same period of time. It is not common sense to say that events that happened almost three years apart were reasonably contemporaneous. We think the trial court was correct in its initial rulings excluding the proffered evidence, but be that as it may; the prosecuting attorney finally relented, made no further objections, and the evidence went in on the issue of impeachment. There was no prejudice to defendant due to the rulings or

actions of the trial court on this issue. The point is denied.

Defendant's motion to transfer to the supreme court before opinion is overruled. The judgment is affirmed.

All concur, except MAUS, C. J., not participating.