**STATE of Missouri, Respondent,**

v.

**Steven E. SMITH, Appellant.**

**No. ED 92056.**

Missouri Court of Appeals,
Eastern District,
Division Two.

June 29, 2010.

Margaret M. Johnston, Columbia, MO, for appellant.

Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Steven Smith (Defendant) appeals from the judgment of the Circuit Court of St. Charles County convicting him of forcible rape, forcible sodomy, assault in the second degree, felonious restraint, and three counts of armed criminal action. Defendant claims that the trial court erred in sustaining the State's objections to: (1) the admission of evidence of prior consensual sexual conduct between Defendant and the victim (S.F.); (2) Adrian Smith's testimony regarding S.F.'s poor reputation for truthfulness; and (3) Darryl Southard's testimony regarding S.F.'s poor reputation for truthfulness. We affirm.

### Background

Viewed in the light most favorable to the verdict, the evidence at trial revealed the following: Defendant was married to S.F.'s mother before she died from cancer on July 12, 2006. At the time of her mother's death, S.F. was twenty-nine years old.

On the morning of October 6, 2006, S.F. received a phone call from Defendant who sounded "really down." Subsequently, S.F. drove to the trailer park where Defendant lived and picked him up. During the day, S.F. brought Defendant along to visit with family members and run errands before returning to Defendant's trailer home that afternoon. While at Defendant's trailer, the two talked and drank alcoholic beverages.

Later in the evening, S.F. decided to spend the night at Defendant's trailer and fell asleep on the loveseat in the living room. In the middle of the night, S.F. felt Defendant playing with her hair and trying to kiss her. S.F. asked Defendant to leave her alone because she was trying to sleep. Defendant told her to take off her clothes. S.F. thought Defendant was "kidding around" and again told him to leave her alone. Defendant then pulled out a knife and instructed S.F. to "take off your clothes or I'm going to slit your F-ing

throat." Still unsure whether Defendant was serious, S.F. told him to leave her alone. Defendant then started "stabbing" at S.F. and held the knife to S.F.'s throat and said, "I told you to take off your fucking clothes."

S.F. began to remove her clothes. As she took off her sweatshirt, S.F. noticed that her white t-shirt was "full of blood" and that blood was running down her arms, legs, and stomach. S.F. realized that she had been stabbed in her left breast and upper left arm.

Defendant ordered S.F. into his bedroom. Once in the bedroom, Defendant had S.F. remove the rest of her clothes. Defendant then instructed S.F. to lie down on the bed and spread her legs. By this point, S.F. was "screaming", "bawling", had "snot rolling down [her] nose", and "could hardly breathe." S.F. sat on the bed, but when she would not open her legs, Defendant climbed on top of S.F., forced her legs open, and put his penis in her vagina. While having sex, Defendant held the knife to S.F.'s throat. Later, Defendant turned S.F. over and penetrated her vagina from behind.

S.F. attempted on several occasions to escape from Defendant's trailer. The first time, S.F. attempted to exit through the back door while Defendant was in the kitchen grabbing cigarettes, but the door was locked. On the second attempt, S.F. tried to leave through the front door, but it was also locked. When Defendant caught S.F. attempting to escape through the front door, a struggle ensued. A lamp was knocked off a table and a recliner was flipped over. Eventually, Defendant grabbed S.F. by her hair and, with the knife, ordered S.F. back to the bedroom. While back in the bedroom, Defendant instructed S.F. to lie on the bed and Defendant put his mouth on S.F.'s vagina.

Defendant returned to the kitchen, and S.F. managed to escape from the trailer. S.F. ran naked to the neighbor's trailer "banging" on the door "screaming help, help!" The neighbors, however, were out of town. Defendant caught up to S.F. and grabbed her by the hair and started dragging her back to his trailer, while holding a butcher's knife.

Tim Russell, who lived in one of the neighboring trailers, heard the "banging" and "yelling" outside. Mr. Russell went outside and saw Defendant dragging S.F. by her arm. S.F. was naked and Defendant was holding a knife in his hand. Mr. Russell saw S.F. "trying to get away" from Defendant. Mr. Russell went back in his trailer and had someone call the police.

Back in his trailer, Defendant ordered S.F. into the bedroom. Defendant told S.F., I was "going to let you go, but now that I got to looking at your tits . . . it's not going to happen."

S.F. managed to escape the trailer a second time. This time, S.F. ran to Mr. Russell's trailer. S.F. beat on the door yelling for the people inside to help her. Mr. Russell opened the door and let her inside to wait for the police to arrive. S.F. was still naked and had blood on her.

Soon thereafter, police officers arrived at the scene and entered Defendant's trailer. The officers saw a lamp lying on the floor and other items "strewn about in the living area." Then, the officers heard Defendant announce that he was in the bedroom. As the officers entered the bedroom, they saw Defendant lying on the bed with a "folding knife protruding from the center of his chest." The officers asked Defendant what had happened, and Defendant told the officers to leave him alone so he could die. Other than the knife wound, the officers did not observe any other injuries on Defendant. Defendant made a statement to the officers where he said

that he had "stabbed the girl and stabbed himself."

Paramedics arrived at Defendant's trailer and treated Defendant. The paramedics observed that there was no bleeding from Defendant's knife wound. The paramedics also noticed blood on the pillow in the bedroom where Defendant was, but the amount of blood was substantially greater than any attributable to the visible wounds on Defendant. After the paramedics transported Defendant to the hospital, doctors discovered a wound on one of Defendant's arms in addition to the knife wound in his chest. Both injuries were "superficial" and were treated with steri-strips—"butterfly bandages." The doctors noticed that Defendant was "behaving in an intoxicated manner." Defendant's toxicology report tested positive for cocaine and showed a blood alcohol level of .246%.

At the trailer park, the police officers also found S.F. at Mr. Russell's home. The officers noticed that S.F. was "shaking" and "crying" and that she had "fresh" cuts on her left arm and chest. Paramedics transported S.F. to a hospital where hospital personnel treated her stab wounds and administered a rape kit. S.F.'s stab wounds were one to two centimeters deep. The rape kit revealed that, in addition to the stab wounds, S.F. had bruises to her neck and right buttock and she had some redness on the base and opening of her vagina and an abrasion on her cervix.

Following the incident, the police arrested Defendant. Subsequently, a grand jury charged Defendant by indictment of forcible rape, forcible sodomy, second degree assault, felonious restraint, and three counts of armed criminal action.

Prior to his trial, Defendant filed a motion seeking to offer evidence of prior consensual sexual conduct between himself and S.F. as evidence that S.F. consented to sex on October 7, 2006. *See* Mo.Rev.Stat. § 491.015.1(1) (2000).[1] In support of the motion, Defendant testified during a pre-trial hearing that he had consensual sexual intercourse with S.F. on three separate occasions between two months and six weeks prior to the date of the charged offenses. Defendant also testified that he had told his friend, Daryl Southard, about the first and third occasions. Defendant further stated that he called Mr. Southard on the day of the crime and told him that S.F. was at his house and they would probably have sex again. Mr. Southard testified at the hearing and stated that Defendant had told him about his sexual encounters with S.F. After the hearing, the trial court issued findings of fact and conclusions of law denying Defendant's motion.

At the pre-trial hearing, Mr. Southard also testified as to his opinion that S.F. had a poor reputation for truthfulness. The trial court sustained the prosecution's objection to Mr. Southard's testimony, and the defense did not attempt to call Mr. Southard at trial.

At trial, the State called S.F., who testified as to the events that occurred on October 6, 2006 and the morning of October 7, 2006. The State also called the neighbor, Mr. Russell, the responding police officers, the paramedics, the doctors who treated Defendant's and S.F.'s wounds, and the nurse who administered the rape kit.

After the State rested, the defense called Adrian Smith to testify as to his opinion of S.F.'s poor reputation for truthfulness in the community. Mr. Smith testified that he was S.F.'s ex-boyfriend who, at one point, had lived with S.F., S.F.'s mother, and Defendant for approximately

---

1. All statutory citations are to Mo.Rev.Stat. (2000), unless otherwise specified.

three months. Defense counsel asked Mr. Smith about his opinion of S.F.'s reputation for truthfulness, and Mr. Smith stated that she was not truthful. The State objected to Mr. Smith's testimony and the trial court sustained the objection.

Defendant testified on his own behalf. According to Defendant, he and S.F. had consensual sex on the night in question. Defendant testified that S.F. had called him on the morning of October 6, 2006, and that they ran errands before returning his trailer. At his trailer, he performed oral sex on S.F. and then they had sexual intercourse. Defendant said that after he and S.F. had sex, S.F. became upset. Defendant testified that he and S.F. began arguing about some of S.F.'s mother's belongings. Defendant stated that he asked her "would she feel better if I were dead too and then she could have all of this crap." Then, Defendant said that, in an attempt to calm S.F. down, "I picked up [a] knife just jokingly with her and she started teasing me and we started wrestling with the knife." Defendant testified that while wrestling, both he and S.F. "got stuck." Defendant said that S.F. subsequently ran out of the trailer naked and he chased after her. Defendant denied having a knife in his hand while outside the trailer. Defendant stated that after they returned to his trailer, they began arguing again. According to Defendant, he again asked S.F. if she would feel better if he were dead, and then he stabbed himself. S.F. ran out of the trailer as Defendant fell onto his bed with the knife in his chest.

The jury found Defendant guilty on all seven counts. Following the jury's recommendation, the trial court sentenced Defendant to concurrent sentences of twenty-five and fifteen years for the forcible rape and forcible sodomy counts, respectively, as well as one ten-year, two five-year, and two seven-year sentences for the remaining five counts to run concurrently to each other but consecutive to the sentences for forcible rape and forcible sodomy. Defendant appeals.

### *Standard of Review*

 "Trial courts retain broad discretion over issues of relevancy and admissibility of evidence, and we will not interfere with those decisions unless there is a clear showing of abuse of discretion." *State v. Steger,* 209 S.W.3d 11, 20 (Mo.App. E.D. 2006). A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Id.* Additionally, we will affirm a trial court's exclusion of evidence if it is correct for any reason, regardless of the reason articulated by the trial court. *State v. Edwards,* 918 S.W.2d 841, 844 (Mo.App. W.D.1996).

### *Discussion*

A. *Evidence of Prior Sexual Conduct with Victim*

In his first point, Defendant asserts that the trial court erred in sustaining the State's objection and prohibiting Defendant from presenting evidence of his prior consensual sexual conduct with S.F. Defendant claims that the evidence was admissible under Mo.Rev.Stat. § 491.015 to prove consent, which was Defendant's defense to the charges of forcible rape and forcible sodomy.

 Section 491.015, commonly referred to as the "rape shield" statute, creates a presumption that evidence of a rape victim's prior sexual conduct is irrelevant. *State v. Osterloh,* 773 S.W.2d 213, 218 (Mo. App. W.D.1989) (citing *State v. Brown,* 636 S.W.2d 929, 933 (Mo. banc 1982), *cert. denied* 459 U.S. 1212, 103 S.Ct. 1207, 75

L.Ed.2d 448 (1983), *overruled in part on other grounds, State v. Jones,* 716 S.W.2d 799, 800 (Mo. banc 1986)). Section 491.015.1(1)–(4) sets forth four exceptions to the presumption and recognizes that, in limited circumstances, prior sexual conduct may be relevant. *Id.* The exception at issue here allows "[e]vidence of the sexual conduct of the complaining witness with the defendant to prove consent where consent is a defense to the alleged crime and the evidence is reasonably contemporaneous with the date of the alleged crime[.]" Mo.Rev.Stat. § 491.015.1(1).[2] If proffered evidence falls within one of the statutory exceptions, it is "admissible only to the extent that the [trial] court finds the evidence relevant to a material fact or issue." Mo.Rev.Stat. § 491.015.2; *State v. Smith,* 157 S.W.3d 379, 382 (Mo.App. E.D.2005).

Prior to trial, Defendant filed a motion under Section 491.015 seeking to offer evidence of prior consensual sexual conduct between S.F. and Defendant. In support of his motion, Defendant testified during a pre-trial hearing that he and S.F. had sexual intercourse on three separate occasions between two months to six weeks before the charged offense. Defendant and his friend, Mr. Southard, both testified that after the first and third occasion, Defendant called Mr. Southard and told him about his sexual encounters with S.F. Defendant sought to introduce the evidence of his prior sexual conduct with S.F. on the basis that it was reasonably contemporaneous with the date of the charged offense and was relevant to his defense of consent to the forcible rape and forcible sodomy charges.

The trial court entered findings of fact and conclusions of law denying Defendant's motion. The trial court first reasoned that Defendant was not advancing the defense of consent and Section 491.015.1(1)'s exception did not apply because Defendant testified that he did not have sex with S.F. following the third occasion in August 2006. Based on this testimony, the trial court deduced that Defendant was not claiming that he had consensual sex with S.F. on October 7, 2006, the date of the charged offense. Second, the trial court found, without explanation, that the alleged instances of consensual sex between Defendant and S.F. were not reasonably contemporaneous to the date of the charged offenses.

Initially, we note that the trial court's conclusion that Defendant was not relying on consent as a defense is not supported by the record. The record is clear that Defendant consistently maintained that the sexual conduct between him and victim on October 7, 2006 was consensual.

We next consider whether the record supports the trial court's determination that Defendant's prior sexual conduct with S.F. was not reasonably contemporaneous with the date of the charged offense. In *State v. Jones,* our Supreme Court, while stating that "[a] definition of 'reasonably contemporaneous' is elusive[,]" provided guidance for applying the "reasonably contemporaneous" standard in Section 491.015. 716 S.W.2d at 801–02.

First, the *Jones* Court addressed the "reasonably contemporaneous" standard as it relates to the temporal relationship be-

---

**2.** The three other statutory exceptions in the "rape shield" statute are as follows:

(2) Evidence of specific instances of sexual activity showing alternative source or origin of semen, pregnancy or disease;

(3) Evidence of immediate surrounding circumstances of the alleged crime; or

(4) Evidence relating to the previous chastity of the complaining witness in cases, where, by statute, previously chaste character is required to be proved by the prosecution.

Mo.Rev.Stat. § 491.015.1(2)–(4).

tween the date of the defendant and victim's prior sexual conduct and the date of the charged offense. Specifically, the *Jones* Court quoted with approval the following statement from *State v. Crisp:*

> Reasonably means within the bounds of common sense. Contemporaneous means originating, or happening, during the same period of time. It is not common sense to say that events that happened almost three years apart were reasonably contemporaneous.

*Id.* at 801 (quoting *State v. Crisp,* 629 S.W.2d 475, 479 (Mo.App. S.D.1981)). Second, the *Jones* Court cautioned that "judicial review by the use of clocks or calendars is not enough[,]" and that we must examine whether, under the circumstances, the exclusion of the evidence deprived the defendant of a fair trial. *Id.*

 In assessing whether the exclusion of Defendant's proffered evidence deprived Defendant of a fair trial, we find the analysis in *Jones* instructive. In *Jones,* the defendant sought to offer evidence that he had consensual sexual intercourse with the victim approximately three and one-half to four and one-half months before the date of the charged offense. *Id.* The *Jones* Court affirmed the trial court's exclusion of the evidence as not "reasonably contemporaneous" within the meaning of the "rape shield" statute, Mo.Rev.Stat. § 491.015.1(1) (1978). *Id.* at 801–02. The Court noted that "[i]f this case involved merely a swearing match between the complaining witness and the accused on the issue of consent we would be inclined to reverse and remand for new trial." *Id.* at 801. However, because the victim's testimony was sufficiently supported by corroborating evidence, the Court concluded that the defendant was not deprived of a fair trial. *Id.* at 801–02. Specifically, the complaining witness testified that she awoke with a pair of hands around her

neck, and that the defendant told her that if she said anything he would kill her and her children. *Id.* at 801. The victim's account was corroborated by an emergency room physician who testified that, upon his examination of the victim, he discovered "a cervical tear, redness on the side of her neck and bruising on the back of her neck." *Id.*; *see also State v. Foulk,* 725 S.W.2d 56, 61 (Mo.App. E.D.1987) (holding that the trial court did not abuse its discretion and the defendant was not deprived a fair trial because "[t]he instant case is not a mere swearing match. The complaining witness' testimony was corroborated by medical testimony."). Cases subsequent to *Jones* have explained that, while a defendant is guaranteed a right to a fair trial, this right must be properly balanced with the underlying objective of the "rape shield" statute. *State v. Murray,* 842 S.W.2d 122, 125 (Mo.App. E.D.1992). The objective of the "rape shield" statute is to provide protection for the privacy of complaining witnesses which, in turn, encourages victims of rape to report and prosecute such crimes without the threat to expose intimate details of prior sexual conduct, if any, to the public. *Id.*; *Brown,* 636 S.W.2d at 933; *see also Michigan v. Lucas,* 500 U.S. 145, 149–50, 111 S.Ct. 1743, 1746 114 L.Ed.2d 205 (1991) (holding that Michigan's "rape shield" statute "represents a valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy."). Where the testimony of the complaining witness is a key element of the State's case, the defendant's right to cross-examine the witness and present evidence tending to disprove the witness's testimony is crucial and outweighs the need to protect the victim's privacy interests. *Murray,* 842 S.W.2d at 125 (citing *Davis v. Alaska,* 415 U.S. 308, 317, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347, 354 (1974)). Conversely,

when a rape victim's testimony is sufficiently supported by corroborating evidence, "the probative value of evidence of prior consensual sexual conduct with the defendant is outweighed by the need to protect the victim's privacy." *Id.* at 126.

There was sufficient evidence adduced in the present case corroborating S.F.'s account of the assault by Defendant. Specifically, the nurse who administered the rape kit testified that she found bruises on S.F.'s neck and right buttock and redness on the base and opening of her vagina, and an abrasion on her cervix. In addition to the medical evidence, the State offered evidence consistent with S.F.'s version of the incident, which showed that some of the blood on Defendant's bed came from S.F.; items of furniture in the living room had been overturned during the struggle between Defendant and S.F.; and Defendant was holding a butcher's knife when he left the trailer to retrieve S.F. The State also elicited evidence of Defendant's prior inconsistent statement to the arriving police officers that Defendant had "stabbed" S.F. and then stabbed himself. Under these circumstances, we conclude that Defendant was not denied a fair trial and that the trial court did not abuse its discretion in excluding the evidence of prior sexual conduct. Point denied.

### B. Evidence of Victim's Poor Reputation for Truthfulness

In his second and third points, Defendant asserts that the trial court abused its discretion in sustaining the State's objections and refusing to allow Adrian Smith and Darryl Southard to testify as to S.F.'s poor reputation for truthfulness. Defendant contends that because S.F. testified at trial, he was entitled to impeach her credibility with evidence of her poor reputation for truthfulness and veracity.

Defendant further claims that Mr. Smith and Mr. Southard knew S.F. in the community and were qualified to testify as to their opinion of S.F.'s reputation.

As with any witness who testifies at trial, a victim in a sex offense case places her reputation for truthfulness at issue by taking the stand, and the defense may impeach the victim's testimony by evidence of her poor reputation for truthfulness and veracity. *State v. Trimble,* 638 S.W.2d 726, 735 (Mo. banc 1982); *State v. Foster,* 854 S.W.2d 1, 4 (Mo.App. W.D. 1993). A person is qualified to testify as to another witness's reputation for truthfulness and veracity if it is shown that the person is familiar with "the general reputation of the witness in the neighborhood or among the people with whom the witness associates...." *State v. Woods,* 428 S.W.2d 521, 523 (Mo.1968) (quotation omitted). Conversely, it is irrelevant what the person personally knows of the general conduct of the witness to be impeached because personal opinion as to a witness's truthfulness and veracity "is immaterial and not admissible." *State v. Schell,* 843 S.W.2d 382, 384 (Mo.App. E.D.1992) (quoting *State v. Huffman,* 607 S.W.2d 702, 704 (Mo.App. E.D.1980)).

With regard to Adrian Smith, Mr. Smith testified that he dated S.F. and lived with S.F., S.F.'s mother, and Defendant for "[m]aybe three months at the most." Mr. Smith stated that while he "didn't know too many people" in S.F.'s neighborhood, he did know some people "that lived in the community." Mr. Smith also testified that he "[m]et a few friends of [S.F.'s] family." Defense counsel asked Mr. Smith what was his "opinion on [S.F.'s] reputation for truthfulness" based on his interactions with the people he met in S.F.'s household. Over the State's objection, Mr. Smith responded, "[S]he's not very truthful." On cross-examination, the

prosecutor asked Mr. Smith whether his opinion that S.F. was untruthful was "based on [his] personal experience." Mr. Smith answered affirmatively. The prosecutor then objected and moved to strike Mr. Smith's testimony regarding S.F.'s poor reputation for truthfulness. The trial court sustained the objection, struck the testimony, and instructed the jury to disregard Mr. Smith's answer. In an offer of proof that followed, Mr. Smith again testified that he lived with S.F. and her family and that he formed an opinion as to S.F.'s reputation for truthfulness, and that her reputation was "[n]ot good." The trial court refused the offer of proof.

The trial court did not abuse its discretion in sustaining the State's objection to Mr. Smith's testimony because the testimony was based on Mr. Smith's personal opinion and not on his knowledge of S.F.'s reputation in the community. *See Huffman*, 607 S.W.2d at 704. Although Mr. Smith knew some people in S.F.'s neighborhood, there was no evidence that Mr. Smith talked with any of those people about S.F.'s reputation. Additionally, Mr. Smith admitted that his opinion of S.F.'s reputation was based on his "personal experience."

■■■ Turning to Mr. Southard's proposed testimony, we, at the outset, note that Defendant's claim is not properly preserved for appeal because Defendant never attempted to call Mr. Southard as a witness at trial. To preserve a claim regarding the trial court's exclusion of evidence, the proponent of the evidence must attempt to present the evidence at trial.[3] *State v. Speaks*, 298 S.W.3d 70, 85 (Mo. App. E.D.2009). We review unpreserved claims only for plain error. *State v. Washington*, 260 S.W.3d 875, 879 (Mo.App. E.D. 2008). Plain error review involves two steps: (1) the trial court must have committed "evident, obvious and clear error that affected substantial rights"; and (2) the error resulted in "manifest injustice or a miscarriage of justice." *Id.* (quotation omitted).

As with Mr. Smith, Mr. Southard was not qualified to testify regarding S.F.'s reputation for truthfulness because there was no evidence that Mr. Southard was familiar with S.F.'s reputation in the community. Mr. Southard, at no time, testified that he was familiar with the people in S.F.'s neighborhood or had discussed with others S.F.'s reputation for truthfulness. Moreover, when asked by defense counsel whether he knew of S.F.'s reputation for truthfulness in the community, Mr. Southard responded, "I never really knew her to be truthful." Mr. Southard's own testimony demonstrates that his opinion of S.F.'s truthfulness was based on his own experience and not her reputation in the community. Consequently, Mr. Southard's testimony was not proper evidence of S.F.'s poor reputation for truthfulness and the trial court did not err, plainly or otherwise, in excluding it.[4] *See Woods*, 428 S.W.2d at 523. Points denied.

---

3. Defendant claims that he properly preserved his objection to the trial court's exclusion of Mr. Southard's testimony because he offered the evidence at the pre-trial hearing on his Section 491.015 motion and during trial he "reoffered the offer of proof he had presented at the motion hearing, incorporating it by reference." A review of the record, however, reveals that Defendant only sought to re-offer the evidence of his prior sexual conduct with S.F. at trial. Defendant did not attempt to re-offer Mr. Southard's testimony regarding S.F.'s poor reputation for truthfulness.

4. We note that for his arguments regarding the admissibility of both Mr. Smith's and Mr. Southard's testimony, Defendant relies heavily on *State v. Allen*, 641 S.W.2d 471 (Mo.App. E.D.1982). *Allen*, however is inapposite. In *Allen*, the court found that the trial court improperly excluded testimony of two wit-

*Conclusion*

The judgment of the trial court is affirmed.

SHERRI B. SULLIVAN, P.J., and ROBERT G. DOWD, JR., J., Concur.

nesses regarding the defendant's reputation for truthfulness when the witnesses testified that they were familiar with the reputation of the defendant and that they had general discussions with others about the defendant's reputation. *Id.* at 472–73. The *Allen* court held that it was not necessary for the witnesses "to recount specific instances where defendant's reputation was discussed or remember specific instances where they had asked about defendant's reputation." *Id.* at 473. Unlike in *Allen*, there was no evidence that Mr. Smith or Mr. Southard had any discussions with others in the community regarding S.F.'s reputation, and it was clear that their opinion of S.F.'s untruthfulness was based on personal experience.