

# In the Missouri Court of Appeals
## Eastern District
### DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED107732 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Hon. Steven R. Ohmer |
| TRAVON DORNAY JOHNSON, | ) | |
| | ) | Filed: |
| Appellant. | ) | June 23, 2020 |

Travon Johnson ("Defendant") appeals from the judgment entered after a jury trial on multiple convictions stemming from a drive-by shooting. We affirm as modified.

In September of 2014, Lamont Hamm was in the car with his girlfriend Layla White and their three-year old son. It was approximately 4:00 p.m., daylight, and White was driving when a dark colored Chevy Impala began chasing them. Hamm saw two men lean out of the Impala's front and rear passenger windows and begin shooting at them, injuring White. Hamm identified the shooters as Defendant and Trevon Jackson ("Codefendant"); the Impala was driven by a third unknown person. Hamm said he and Defendant used to be friends, but that Defendant was upset with him because a friend of Hamm's had broken into Defendant's home. Hamm told police he was tired of Defendant shooting at him, referring to an incident in August of 2014 in which Hamm and another man were shot at; the other man died, and initially Hamm did not identify Defendant

as the shooter to police, but now that "innocent" people were involved Hamm said he was willing to divulge Defendant's involvement in that earlier incident.

In addition to Hamm's eyewitness account of the September shooting, there was cell phone evidence showing that Defendant had received several calls just before 4:00 p.m. on that day at locations near where the incident occurred. When Defendant and Codefendant were arrested after trying to flee in Defendant's blue Chevy Impala the day after the September shooting, the police found two guns in the car, one of which was a 9mm identified by ballistics evidence as the gun used in the shooting. Defendant admitted the guns were his. Unspent ammunition of the same caliber was also found in a search of Defendant's home.

Defendant and Codefendant were jointly charged for the September shooting with three counts of assault in the first degree (one for each of the three victims in the car), one count of unlawful use of a weapon and four associated armed criminal action counts. Defendant was also charged individually with murder, assault, unlawful use of a weapon and associated ACAs for the August incident and individually for resisting a lawful stop, resisting arrest and assault of a law enforcement officer stemming from the car chase prior to his arrest in September. At the joint trial with Codefendant, Defendant presented an alibi defense, claiming he was helping his girlfriend move the day of the September shooting, and Codefendant presented no evidence. Defendant was found not guilty on all counts relating to the August incident, guilty on all counts involving his September arrest and guilty on all counts relating to the September shooting. Codefendant was found not guilty. Defendant was sentenced to a total of 90 years imprisonment. Defendant appeals only the convictions relating to the September shooting.

**Inconsistent Verdicts**

In his first point on appeal, Defendant contends the court plainly erred in accepting guilty verdicts for Defendant on the same counts for which Codefendant was found not guilty. On each of the counts for which Defendant and Codefendant were jointly charged, the jury received two sets of verdict-directors: one set regarding the requirements for finding Defendant guilty and one set regarding the requirements for finding Codefendant guilty. Each verdict-director for each defendant on each count had two components. The first component was to determine the *actus reus*: in each set, the jury was instructed that if it found that either Defendant or Codefendant engaged in the requisite acts constituting the crime—so, for assault in the first degree, knowingly causing serious injury by shooting—then it must find that the crime occurred. The second component of each verdict-director instructed the jury to determine the requisite *mens rea*: in Defendant's set of instructions, the jury was directed to find Defendant guilty if it found that "with the purpose of promoting or furthering the commission of" that crime, Defendant acted together with Codefendant in the requisite acts; similarly, to find Codefendant guilty, the jury had to find that "with the purpose of promoting or furthering the commission of" that crime, Codefendant acted together with Defendant in the requisite acts.

Defendant insists that Codefendant's not guilty verdicts were dependent on a finding that Codefendant did not "act together" with Defendant and since Defendant's guilty verdicts were necessarily dependent on the opposition conclusion, the verdicts are inconsistent. But this logic ignores the individualized *mens rea* element. Codefendant was only guilty of the crime if he acted together with Defendant *with the purpose of* promoting or furthering the commission of the crime. In other words, Codefendant's not guilty verdicts could be based on the finding that he acted together with Defendant, but not for that criminal purpose. *See State v. McGee*, 284 S.W.3d 690, 708–09 (Mo. App. E.D. 2009) (holding that, on instructions similar to this case, jury could find

defendant was present but did not act with requisite purpose). The jury could have found that Codefendant and Defendant acted together, but that only Defendant acted with the requisite *mens rea*. The resulting guilty verdicts for Defendant and not guilty verdicts for Codefendant are, therefore, not inconsistent. *See id.*

**Sufficiency of the Evidence**

In his second point relied on, Defendant purports to challenge the sufficiency of the evidence, essentially raising the same argument as his first point: that the not guilty verdicts for Codefendant "evidences a failure of proof" on the "acting together" element as it is set out in the verdict-directors. This argument completely misses the point of a sufficiency of the evidence challenge. A claim that the evidence was insufficient is actually a challenge to the trial court's ruling on the motion for judgment of acquittal at the close of evidence, which is filed *before* the case is submitted to the jury. *State v. Myles*, 479 S.W.3d 649, 660 (Mo. App. E.D. 2015). Thus, the real question is whether by the close of evidence the State has presented sufficient evidence to submit the case to the jury, which is reviewed *without regard* to the verdict-director. *Id.; see also State v. Young,* 369 S.W.3d 52, 54 n. 3 (Mo. App. E.D. 2012). And to succeed on a sufficiency claim, an appellant must (1) identify the element of the crime he claims was not proven, (2) set forth the evidence in the record tending to prove that element and (3) show why such evidence and the reasonable inferences therefrom are so non-probative that no reasonable fact-finder could have found that element was sufficiently proven. *State v. Finch*, 398 S.W.3d 928, 929 (Mo. App. S.D. 2013) (discussing three analytical steps required to challenge sufficiency). But here Defendant does not identify any evidence, much less explain how it is not probative of the "acting together" element. His argument is, instead, solely based on the jury's conclusion under the verdict-director. Not only is this argument wholly misplaced in a sufficiency challenge, it is without merit as

discussed above:  Codefendant's acquittal does *not* necessarily demonstrate a lack of evidence that he and Defendant acted together.  Defendant's sufficiency challenge fails on its face.

**Admission of Evidence**

In his third point relied on, Defendant contends the court abused its discretion by admitting into evidence the unused ammunition seized from his home.  Defendant relies on the general proposition that weapons and ammunition *unconnected* with the crime or the defendant are inadmissible because they lack probative value and are prejudicial.  *See generally State v. Hosier*, 454 S.W.3d 883, 895 (Mo. banc 2015).  But this ammunition was not unconnected: it was found in Defendant's home and was of the same caliber as the ammunition used in the shooting.  Moreover, Defendant only challenges the admission of the ammunition itself, not the testimony from the police officer describing the ammunition he found in Defendant's home.  "[A] defendant is not prejudiced by the admission of allegedly improper evidence when the same facts were established without objection by other evidence."  *State v. Riggs*, 520 S.W.3d 788, 798 (Mo. App. S.D. 2016); *see also State v. Jones*, 369 S.W.3d 77, 81 (Mo. App. E.D. 2012).  In other words, to the extent the fact that Defendant had a "cache" of ammunition in his home was prejudicial, as he claims, that is attributable to the officer's testimony, not the admission of the ammunition itself.  *See State v. Edwards*, 31 S.W.3d 73, 82 (Mo. App. W.D. 2000) (finding no additional prejudice from admission into evidence of knives found in defendant's home where officer previously testified without objection to finding knives in defendant's home, which was not challenged on appeal).  It was not an abuse of discretion to admit the ammunition into evidence at trial.

In his fifth point on appeal, Defendant contends the court clearly erred by denying his motion to suppress and admitting into evidence statements he made to police.  Defendant argues that he immediately requested counsel when he was taken into custody and, though initially there

was no interrogation, a few hours later the police began interrogating him without counsel present. Thus, he contends, the statements he made during that interrogation were illegally obtained and inadmissible. But Defendant acknowledges that the challenged statements were not played during the State's case in chief, only during cross-examination of Defendant to impeach him after he testified inconsistently with those statements and in the State's rebuttal to Defendant's assertion of an alibi that was not mentioned in his statements. A statement obtained illegally in violation of the rules regarding interrogation after a request for counsel *can* be used to impeach a defendant or on rebuttal. *See generally Oregon v. Hass,* 420 U.S. 714, 722 (1975); *State v. Thomas*, 698 S.W.2d 942, 948 (Mo. App. S.D. 1985); *State v. Engel*, 859 S.W.2d 822, 829 (Mo. App. W.D. 1993). "To hold otherwise would . . . permit a constitutional shield to be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." *Thomas*, 698 S.W.2d at 949 (internal quotation marks and citation omitted). Thus, even if they were illegally obtained, it was not error to admit Defendant's statements for purposes of impeachment and rebuttal, and Defendant has provided no argument to suggest otherwise.

### Exclusion of Evidence

In his fourth point on appeal, Defendant argues the court abused its discretion in excluding testimony that an alternative person, Vincent Perry, had a motive and the opportunity to commit this crime. Missouri follows the "direct connection rule": evidence that another person had an opportunity or motive to commit the charged crime is only admissible if there is also proof that the other person committed some act directly connecting him with the crime. *State v. McKay*, 459 S.W.3d 450, 458 (Mo. App. E.D. 2014); *State v. Nash*, 339 S.W.3d 500, 513 (Mo. banc 2011). In other words, the directly-connected act is a threshold requirement for the admission of other evidence tending to show that the person had motive and opportunity. *McKay*, 459 S.W.3d at 45.

6

The act must clearly and directly link the other person with the *corpus delicti*. *Id.*; *Nash*, 339 S.W.3d at 513. "Disconnected and remote acts, outside the crime itself cannot be separately proved for such purpose; and evidence which can have no other effect than to cast a bare suspicion on another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible." *Nash*, 339 S.W.3d at 513 (*quoting State v. Rousan,* 961 S.W.2d 831, 848 (Mo. banc 1998)).

Defendant sought to introduce evidence that Perry had a motive to shoot at Hamm because Hamm had stolen Perry's guns. Defendant claims the threshold act directly connecting Perry to the shooting is that on the day of this crime, Perry was driving Defendant's blue Chevy Impala and had access to the guns that were in that car. The testimony Defendant relies on, however, was merely that Perry "had" Defendant's car that day. The only testimony that he was seen "driving" that car was limited to some unspecified point later in the day after dark, when Perry arrived at Defendant's sister's home in the car. This amounts to nothing more than speculation that Perry was driving that car at any other point during that day, much less at the time or place of the shooting. It is not an act that clearly and directly connected Perry to the crime itself. There is no more than a conjectural inference and bare suspicion that Perry committed the crime. Thus, it was not an abuse of the trial court's discretion to exclude evidence of Perry's alleged motive.

In his sixth point, Defendant argues that the court erred by prohibiting him from inquiring into Hamm's pending federal charges. As a general rule, a witness may not be impeached with a pending criminal charge unless a foundation is laid clearly demonstrating one of the following exceptions: (1) a specific interest of the witness; (2) the witness's motivation to testify favorably for the State; or (3) the witness is testifying with an expectation of leniency. *State v. Moore*, 252 S.W.3d 272, 276 (Mo. App. S.D. 2008). The key in laying this foundation is to show the *witness's*

*perception* of expectancy of favorable treatment. *Id*. Speculative or theoretical motives for testifying are not sufficient to show the necessary connection between the witness's pending charges and the giving of his trial testimony. *See id.*; *see also State v. Watts*, 813 S.W.2d 940, 943 (Mo. App. E.D. 1991). In other words, "unrelated pending charges" are inadmissible when there is nothing in the record to demonstrate the witness's "perception of either favorable treatment if he testified favorably to the State or harsh treatment if he testified unfavorably." *Moore*, 252 S.W.3d at 277.

Defendant has made no record in this case as to Hamm's perception of how his testimony in this case might impact his treatment in the federal case. First, Defendant made no attempt to introduce this evidence at trial after the court granted the State's motion in limine to exclude evidence of the pending federal charges, much less make an offer of proof upon its continued exclusion. *See State v. Hunt,* 451 S.W.3d 251, 263 (Mo. banc 2014) ("To preserve a claim of improperly excluded evidence, the proponent must attempt to present the excluded evidence at trial and, if it remains excluded, make a sufficient offer of proof"). Second, Defendant relies entirely on counsel's narrative in response to the motion in limine to demonstrate the content of the excluded evidence and prove its admissibility. Reliance on counsel's assertions instead of a traditional offer of proof runs the risk that those assertions will be insufficient to accomplish the purpose of an offer of proof, namely to demonstrate the content, purpose and other facts necessary to establish the admissibility of the excluded evidence. *State v. Murphy*, 534 S.W.3d 408, 415 (Mo. App. E.D. 2017). That is precisely the problem here. Counsel's narrative merely attests to the existence of the federal indictment and *counsel*'s speculative belief that the federal case might be impacted by Hamm's testimony in this case. There is absolutely nothing in this narrative about

8

whether *Hamm* believed that or expected leniency or was motivated to testify in a way that *Hamm* believed might impact his federal case.

The cases Defendant cites in support of this point are clearly distinguishable. In *State v. Joiner*, the pending charges against the witness were brought by the same prosecutor trying the defendant's case. 823 S.W.2d 50, 53 (Mo. App. E.D. 1991). The holding in *Joiner* has been expressly limited to that circumstance, which is not present in this case. *See State v. Nettles*, 10 S.W.3d 521, 528 (Mo. App. E.D. 1999). In *State v. Clark*, there was an offer of proof in which the witness stated he hoped he would reap a benefit in sentencing on another case by testifying against the defendant. 364 S.W.3d 540, 544 (Mo. banc 2012). But here, there is nothing in the record connecting Hamm's perceptions about the federal case and his testimony in this case. Thus, Defendant has wholly failed to demonstrate an exception to the general rule that pending charges are inadmissible and there was no error, therefore, in excluding that evidence here.

In his seventh point, Defendant claims the trial court erred when it prohibited him from asking Layla White about Hamm's reputation for lying. A person can testify as to another witness's reputation for truthfulness and veracity if that person is familiar with "the general reputation of the witness in the neighborhood or among the people with whom the witness associates." *State v. Smith*, 314 S.W.3d 802, 811 (Mo. App. E.D. 2010) (internal quotation marks and citation omitted). But one's personal opinion about another witness's truthfulness is irrelevant and inadmissible. *See State v. Smith*, 314 S.W.3d 802, 811 (Mo. App. E.D. 2010).

The only attempt by Defendant to solicit evidence about Hamm's reputation for lying is as follows:

> Q: Do you know the community that Lamont lives in generally?
> A: Yes.
> Q: Do you have an opinion about his reputation for truthfulness?
> PROSECUTOR: Objection.

COURT:  Sustained.
DEFENDANT'S COUNSEL:  Judge, I'll leave it at that.[1]

Again, Defendant made no offer of proof as to White's answer, instead relying on the assertion in his motion for new trial that in a deposition White had said Hamm had a very bad reputation for lying.  But even assuming that "he has a very bad reputation for lying" would have been White's answer at trial, it was not shown that White was familiar with Hamm's general reputation in the community—only that she "know[s] the community"—and the question asked only for White's opinion about Hamm's reputation.  Defendant's question would not have solicited proper evidence of Hamm's poor reputation for truthfulness.  Having "left it at that" and failing to make an adequate offer of proof, Defendant has provided no record to establish the admissibility of the challenged testimony, and it was not error to exclude it.

Moreover, as Defendant himself admits, the veracity of Hamm's testimony was "already highly questionable" based on other unchallenged evidence admitted at trial to impeach Hamm's credibility, including his extensive criminal history, prior gang affiliation and his admission that he lied to police about an earlier shooting incident in August of 2014.  Defendant contends that because the jury acquitted him of the counts relating to the August incident, had these two additional pieces of impeachment evidence—Hamm's reputation for lying and his pending federal charges—been admitted that "*might* reasonably have tipped the balance of the scales" in his favor on the other counts.  But because the jury already knew Hamm was a liar and a criminal, there is no reasonable *probability* that disclosure of two additional pieces of evidence demonstrating that he was a liar and a criminal would have affected the outcome of the trial.

---

[1] Defendant also cites another line of questioning in which White testified that Hamm had "lied to her before" and was asked whether he "lies about a lot of things," which drew an objection from the State that was also sustained.  But this exchange occurred during *Codefendant's* cross-examination of the witness and, in any event, has nothing to do with Hamm's reputation, only White's personal experience with Hamm.

10

**Written Sentence**

In his eighth and final point on appeal, Defendant argues the trial court plainly erred in entering a written sentence on two counts that are materially different than the sentences imposed during the court's oral pronouncement on those counts. In general, where an oral pronouncement of a defendant's sentence is materially different than the written sentence, the oral pronouncement controls if it is unambiguous. *State v. Wolford*, 590 S.W.3d 324, 330 (Mo. App. E.D. 2019).

Here, the court orally pronounced the sentence as follows:

Counts VII and VIII, assault first and ACA, 25 years each. "Those sentences run concurrent with each other for a total sentence of 25 years."

Counts IX and X, assault first and ACA, 25 years each. "The sentence in Count X runs concurrent with the sentence in Count IX for a total sentence of 25 years. But those sentences, again, IX and X run consecutive to the sentences in VII and VIII, for a total sentence of 50 years."

Counts XI and XII, assault first and ACA, 25 years each. "Those sentences run concurrent with each other for a total sentence of 25 years, but consecutive to Counts VII and VIII, and consecutive to Counts IX and X, for a total sentence there of 75 years."

Counts XIII and XIV, unlawful use of a weapon and ACA, 25 years each. "Those sentences run concurrent with each other for a total sentence of 25 years. Those sentences *also run concurrent with* Counts VII, VIII, IX, X, XI and XII."

Count XV, assault second on a law enforcement 15 years, and Count XVI and XVII, resisting stop and resisting arrest, 7 years each. "Those sentences run concurrent with each other for a total sentence of 15 years, but those sentences also run consecutive to Counts VII, VIII, IX, X, XI, XII, XIII, and XIV, for a total sentence of 90 years."

The written judgment accurately reflects this oral pronouncement except as to Count XIV. For that count, the court checked the "concurrent" box and wrote in Count XIII next to it. But the court also checked the "consecutive" box and wrote in Counts VII through XII next to that. Thus, the written judgment indicates that Count XIV is to run concurrent with Count XIII, which is consistent with the oral pronouncement, but consecutive to Counts VII through XII, which is

11

materially different than the oral pronouncement that XIV would run concurrent with all of those earlier counts. The State concedes the "consecutive" box was inadvertently marked on Count XIV. Defendants asks us to remand for the trial court to fix the discrepancy, but we may correct this type of error in the written judgment without remand. *See Wolford,* 590 S.W.3d at 332–33.

Defendant contends the written judgment on Count XIII contains the same problem, but on that count the court checked only the "concurrent" box and wrote in Counts VII through XII. Although those counts are written near the "consecutive" box, the box itself is unchecked and there is no indication that Count XIII is to run consecutively to those earlier counts. Thus, the written judgment is the same as the oral pronouncement, and there is no error to correct on that count.

## **Conclusion**

Defendant's eighth point on appeal is granted, and all other points are denied. The judgment and sentence is modified as follows: on Count XIV, Defendant was sentenced to 25 years in prison to be served concurrently with the sentence on Counts VII through XIII. The judgment and sentence is affirmed as modified herein.

ROBERT G. DOWD, JR., Judge

Robert M. Clayton III, P.J. and
Michael E. Gardner, J., concur.

12