**STATE of Missouri, Respondent,**

v.

**Wendell KLEEN, Appellant.**

**No. 56934.**

Supreme Court of Missouri,
Division No. 1.

March 12, 1973.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Lynn M. Ewing, Jr. and Gerald D. McBeth, Ewing, Ewing, Carter, Wight & Woodfill, Nevada, for appellant.

SEILER, Judge.

This is an appeal from conviction on an insufficient funds check charge, Sec. 561.-460, R.S.Mo.1969, V.A.M.S. Since this ap-

peal was pending here on January 1, 1972, the effective date of the 1970 amendment to the judicial article, the appeal comes within our exclusive jurisdiction as set by Art. V, Sec. 3, Mo.Const.1945, V.A.M.S., as it existed prior to the amendment.

Defendant, a resident of Nevada, Missouri, was in the business of buying and selling truck loads of grain and meal. He signed a check on Citizens State Bank of Nevada, dated February 17, 1970, and gave it to his truck driver. The check bore the words "For loads only", and was incomplete and in blank as to payee and amount. The driver usually had more than one such load check when he would leave Nevada. It would not be known for what or where the check would be used until the driver purchased a load with it.

In the instance before us, either defendant or his secretary told the driver to go to Memphis, Tennessee. There the driver purchased a load of cottonseed meal at a plant or warehouse, where Herring Sales Company, a dealer in feed ingredients, had arranged, through its own advance purchase, for delivery and sale of meal in certain months. Sales to customers at the Memphis warehouse were by the ton at the pickup point. The weight of the load being purchased and the amount due were determined after the truck was loaded. The sale was considered a cash sale and no delivery or sale was made unless the driver paid in cash or delivered a check in full. Someone at the Memphis plant filled in the name of the seller, Herring Sales Company, on the check before us, together with the amount due for the load sold, $1,909.00, and added the words "cottonseed meal." It is undisputed the check was delivered in Memphis.

The check was then sent from Memphis to the Herring Sales Company office in Kansas City, Missouri,[1] where it was de-posited and in due course returned unpaid because of insufficient funds in defendant's account in the bank at Nevada. The evidence showed that at no time between February 16 and February 26 did defendant have sufficient funds in or credit with the bank to pay the check. The banker at Nevada testified the check was presented and dishonored on "approximately February 24th". On March 16, 1970, Herring Sales gave defendant written notice, per Sec. 561.470, R.S.Mo.1969, V.A.M.S., of the dishonor of the check, but the check was not paid.

There was evidence defendant had in the past bought grain from Herring Sales and one of their men from the Kansas City office had known defendant about three years, but there was no evidence of any advance knowledge, arrangements, or negotiations between Herring Sales and defendant with respect to the Memphis purchase.

■ Defendant raises several questions on appeal, but the initial question is whether on the above facts defendant can be found guilty in Missouri of violation of Sec. 561.460, supra, the insufficient funds check statute. We hold not, because the evidence fails to show that "the constituent facts of the offense, the occurrence of which must be alleged and proved by the state in order to sustain a conviction", State v. Hook, 433 S.W.2d 41, 46 (Mo. App.1968), took place in Missouri, and the Missouri courts have no jurisdiction to prosecute for an offense which occurs in another state, State v. Shaeffer, 89 Mo. 271, 1 S.W. 293 (1886).

■ In this case the state proved that defendant signed the check in question, in Nevada, but it was not at that time actually a check, because it did not contain a promise to pay a sum certain, as it was blank as to amount, nor was it payable to

---

1. The record is silent as to what person or firm did the mailing of the check. The fair inference is that it was done by the warehouse as agent for the seller because there was testimony from the Herring Sales representative that the check was accompanied by "our invoice".

order or bearer, as it was also blank in this respect. It therefore was not legally a check at that point. Sec. 400.3–104, R.S. Mo.1969, V.A.M.S. The piece of paper was still in that condition when defendant gave it to his truck driver in Nevada and when the truck driver crossed into Tennessee with it. Had all action stopped right there, it could not be contended that defendant had violated any law.

■■■ Later, his agent, the truck driver, used the check to purchase a load of cottonseed meal for defendant, but this took place in Memphis, Tennessee. At that time, the amount to be paid for the load was determined by weighing it and computing the price at so much per ton. Someone at the warehouse in Memphis inserted the correct amount in the check and the name of the payee. The check was then physically delivered in payment for the cottonseed meal. Had all this occurred in Missouri, defendant would have been in violation of Sec. 561.460, because he would have been guilty of procuring a load of meal by means of having made and delivered with intent to defraud a check, knowing that he did not have sufficient funds in or credit with the bank for payment of the check upon presentation. As it was, however, the check was not made until it was completed in Memphis and it was not delivered in the sense of being passed or uttered until it was handed over at Memphis to the seller of the meal in payment therefor, taking the word "delivery" in its usual and ordinary meaning, State v. Athans, 490 S.W. 25, decided by this court February 12, 1973. The check must be used "to procure", to induce the party defrauded to part with his property, State v. Garner, 432 S.W.2d 259 (Mo.1968). Defendant did not offer this check in the sense of getting something by an insufficient funds check until it was delivered to the seller in Memphis. Then and there is where the required intent to defraud by misrepresentation of an existing fact occurred—the ob-

taining of the meal by completion and delivery of the check knowing at the time there were not sufficient funds or credit for payment in full on presentation.

It is true the check could not have been completed and delivered in Memphis if it had not been prepared in part and started on its way by defendant at Nevada, Missouri. But the acts necessary to complete the offense occurred in Tennessee. The situation is similar to State v. Hall, 114 N.C. 909, 19 S.E. 602 (1894), where the defendants, while standing within the boundaries of the state of North Carolina, pulled the trigger and started the bullet on its way toward the deceased, who was then in Tennessee, where he was wounded and died. The defendants were prosecuted in North Carolina and convicted of murder. On appeal the question was presented whether they committed the offense of murder within the jurisdiction of North Carolina. The North Carolina court reversed the conviction, saying at 19 S.E. 602: "It is a general principle of universal acceptation that one state or sovereignty cannot enforce the penal or criminal laws of another, or punish crimes or offenses committed in and against another state or sovereignty . . . ." The court went on to conclude: "In view of the foregoing authorities, it cannot be doubted that the place of the assault or stroke in the present case was in Tennessee; and it is also clear that the offense of murder at common law was committed within the jurisdiction of that state. If this be so, it must follow that unless we have some statute expressly conferring jurisdiction upon the courts of this state, or making the act of shooting under the circumstances a substantive murder, the offense with which the prisoners are charged can only be tried by the tribunals of Tennessee . . . ." So it is here and the judgment accordingly must be reversed.

All of the Judges concur.