**STATE of Missouri, Plaintiff–Respondent,**

v.

**Michael S. WILLIAMS, Defendant–Appellant.**

**No. SD 32306.**

Missouri Court of Appeals, Southern District, Division Two.

Nov. 22, 2013.

Erika R. Eliason, Columbia, MO, for appellant.

Chris Koster, Attorney General, and Dora A. Fichter, Assistant Attorney General, Jefferson City, MO, for respondent.

GARY W. LYNCH, J.

Michael S. Williams ("Defendant") appeals his conviction following a bench trial for two counts of statutory sodomy in the first degree, in violation of section 566.062,[1] for which he was sentenced to concurrent ten-year terms. On appeal, Defendant presents two points that challenge the sufficiency of the evidence to convict. Finding no merit in Defendant's claims, we affirm.

### *Factual and Procedural Background*

"When judging the sufficiency of the evidence to support a conviction, appellate courts ... accept as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict and ignore all contrary evidence and inferences." *State v. Wooden,* 388 S.W.3d 522, 527 (Mo. banc 2013). Viewed in this light, the following evidence was adduced at trial.

T.R. ("Victim") was born in July 2007 and lived with her mother ("Mother") and brother in Harrison, Arkansas.[2] Approximately a year or two before the circumstances giving rise to this case, Mother befriended a woman named Shannah Woodruff ("Woodruff") who was at all rele-

---

1. All references to statute are to RSMo Cum. Supp.2010, unless otherwise indicated.

2. We have chosen to withhold the names of Victim and members of her family in order to protect their identity. *See* section 566.226.

vant times married to Defendant. Thereafter, Mother periodically arranged for Woodruff to babysit Victim at Woodruff and Defendant's home, which was also located in Harrison, Arkansas. At some point, Woodruff and Defendant moved to Seymour, Missouri. For a period between December 2010 and February 2011, Woodruff periodically continued to babysit Victim at the house she shared with Defendant in Missouri. Mother never went to Missouri to either drop off or pick up Victim at Woodruff's home; instead, Woodruff would rendezvous with Mother in Harrison, Arkansas, or somewhere in between for the exchange. On one occasion, when the exchange took place at the Missouri–Arkansas state line, Woodruff was accompanied by Defendant.

The length of time that Woodruff babysat Victim varied between a single night to, on one occasion, an entire week. With regard to Woodruff's babysitting, Mother observed that "[Victim] loved it[,]" and "[s]he wanted to go." However, on one occasion in February 2011, when Woodruff was supposed to babysit Victim, Victim cried and told Mother that she did not want to go. At first, Mother thought little of the episode and concluded that Victim merely wanted to stay at home with Mother.

Sometime in May 2011, however, Victim informed Mother that she was scared of Defendant. Mother asked Victim what she meant, whereupon Victim disclosed that Defendant had put his finger in her "butt," further stating that "[i]t hurt so badly, but he did it anyway." Later, Victim disclosed to Mother that Defendant also had touched her "peepee."

Shortly thereafter, Victim was taken to see Michelle Stein ("Stein"), a forensic examiner, who interviewed Victim at Grandma's House Children's Advocacy Center in Harrison, Arkansas. During the recorded interview, Victim stated that Defendant had touched her "peepee" and her "butt."

Defendant was charged by felony information with two counts of first-degree statutory sodomy. Count 1 alleged in part that Defendant had deviate sexual intercourse with Victim "by inserting the defendant's finger in the vagina of [Victim]." Count 2 alleged in part that Defendant had deviate sexual intercourse with Victim "by inserting the defendant's finger in the anus of [Victim]." Both offenses were alleged to have occurred "on or between December 1, 2010[,] and February 15, 2011, in the County of Webster, State of Missouri."

At trial, Victim's hearsay statements to her mother and Stein were admitted pursuant to section 491.075. An investigator with the Webster County Sherriff's Department also testified, establishing the address of Woodruff and Defendant's Seymour residence and its location within Webster County, Missouri. Victim, who was five years old at the time of trial, was the final witness to testify for the State. During the direct examination of Victim, the prosecutor asked where Defendant had touched Victim, to which Victim responded, "My peepee." The prosecutor ("Ms. Padgett") proceeded to inquire whether Defendant had also touched Victim in other places. The following colloquy ensued, punctuated by an objection from defense counsel ("Ms. Porter"):

Q. Okay. Has he—Had [Defendant] ever touched any other place on your body other than your peepee?

A. No.

Q. Okay.

A. That's all.

Q. That's all. He didn't touch your butt?

A. (No audible response.)

MS. PORTER: Judge, I'm going to object, that's leading.

MS. PADGETT: You may not want to object because she just said no.

MS. PORTER: Okay. Withdrawn.

MS. PADGETT: Okay.

THE COURT: All right. Overruled. And then for the record, it was a negative headshake in response to the question.

MS. PADGETT: That's correct.

Following the trial, the court found that the alleged crimes occurred within the state of Missouri and found Defendant guilty as charged on the two counts of first-degree statutory sodomy. Defendant timely appeals.

### Standard of Review

"The same standard of review is followed in criminal cases tried by the court without a jury as in cases tried by a jury." *State v. Parrow*, 118 S.W.3d 629, 629 (Mo.App.2003). "'Generally, this Court's review of the sufficiency of the evidence is limited to whether the State has introduced sufficient evidence for any reasonable juror to have been convinced of the defendant's guilt beyond a reasonable doubt.'" *State v. Jeffrey*, 400 S.W.3d 303, 312–13 (Mo. banc 2013) (quoting *State v. Nash*, 339 S.W.3d 500, 508–09 (Mo. banc 2011)).

When judging the sufficiency of the evidence to support a conviction, appellate courts do not weigh the evidence but accept as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict and ignore all contrary evidence and inferences. This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt. This Court will not weigh the evidence anew since the fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances, and other testimony in the case.

*Jeffrey*, 400 S.W.3d at 313 (internal quotation marks and citations omitted).

### Discussion

### Evidence was Sufficient to Support Finding that Missouri has Jurisdiction

In his first point on appeal, Defendant contends that the state of Missouri lacked jurisdiction over the alleged crimes. Defendant does not dispute that Missouri would have jurisdiction if the crimes were committed as alleged in the felony information. *See* section 541.191.[3] Rather, De-

---

**3.** Section 541.191 provides:

1. This state has jurisdiction over an offense that a person commits by his own conduct or the conduct of another for which such person is legally accountable if:

(1) Conduct constituting any element of the offense or a result of such conduct occurs within this state; or

(2) The conduct outside this state constitutes an attempt or conspiracy to commit an offense within this state and an act in furtherance of the attempt or conspiracy occurs within this state; or

(3) The conduct within this state constitutes an attempt, solicitation, conspiracy or facilitation to commit or establishes criminal accountability for the commission of an offense in another jurisdiction that is also an offense under the law of this state; or

(4) The offense consists of an omission to perform a duty imposed by the law of this state regardless of the location of the defendant at the time of the offense; and

(5) The offense is a violation of a statute of this state that prohibits conduct outside the state.

2. When the offense involves a homicide, either the death of the victim or the bodily impact causing death constitutes a

fendant's contention takes the form of a sufficiency-of-the-evidence challenge, in that Defendant argues that the state "failed to prove beyond a reasonable doubt that the crimes occurred in Missouri[.]"

The State counters that it was not obligated to prove jurisdiction beyond a reasonable doubt. Rather, because jurisdiction is not an "element" of statutory sodomy in the first degree, *see* § 566.062, the State argues that it need only be "'reasonably inferred by the facts and circumstances that the charged crime occurred within the trial court's jurisdiction.'" (quoting *State v. Walton*, 920 S.W.2d 585, 586 (Mo.App.1996)). However, the State's argument ignores that the quoted language from *Walton* concerned the standard of proof for establishing proper venue—not jurisdiction. *See Walton*, 920 S.W.2d at 586.

■ Recognizing that the concepts of venue and jurisdiction have traditionally been conflated in Missouri criminal jurisprudence, our supreme court in *State v. Taylor*, 238 S.W.3d 145 (Mo. banc 2007), clarified that venue is not jurisdictional.[4] "Venue determines, among many courts with jurisdiction, the appropriate forum for the trial." *Id.* at 149. The venue requirement is not absolute; it can be waived, for example if a defendant moves for a change of venue or fails to raise the issue before

trial. *Id.* at 150; *see also* Rules 32.03 and 32.04. If venue is properly objected to, the State then must prove by a preponderance of the evidence that the crime occurred in the county where the case is filed. *Taylor*, 238 S.W.3d at 150.

■ In contrast, "[j]urisdictional doctrine prevents courts from holding trials when the crime at issue occurred out of state; a state court lacks the authority to enforce criminal law unless the conduct, or some substantial portion of it, occurred within the state." *Id.* at 149. If jurisdiction is lacking, a court has "no power to hear a case." *Id.*; *see also State v. Kleen*, 491 S.W.2d 244, 245 (Mo.1973); *State v. Moss*, 791 S.W.2d 501, 502 (Mo.App.1990).

■ Because of this fundamental difference between venue and jurisdiction, cases discussing the standard of proof for establishing venue offer no support as to the appropriate standard of proof for establishing jurisdiction. Unfortunately, neither party has cited us to any case law, nor can we find any, that directly addresses the standard of proof required to establish jurisdiction in a criminal case in Missouri.[5] We need not decide that issue, however, because we are convinced that the evidence adduced here was sufficient under the highest standard—beyond a reasonable doubt—to establish that Missouri has jurisdiction.[6]

---

result within the meaning of subdivision (1) of subsection 1 of this section. If the body of a homicide victim is found in this state it is presumed that the result occurred in this state.

3. This state includes the land and water and the air space above the land and water.

4. The melding of venue with personal jurisdiction was effectively severed in the civil context by *State ex rel. DePaul Health Center v. Mummert*, 870 S.W.2d 820 (Mo. banc 1994).

5. Defendant analogizes the instant case to *State v. Kleen*, 491 S.W.2d 244 (Mo.1973), in

which the Supreme Court of Missouri found that Missouri did not have jurisdiction to convict the defendant on an insufficient funds check charge. However, *Kleen* is inapposite in that the dispositive facts were not contested; rather, the issue on appeal was purely legal. *See id.* at 245.

6. We note that of the states that have addressed the standard of proof for establishing jurisdiction when factually disputed in a criminal context, the dominate view is that the state must establish its jurisdiction beyond a reasonable doubt. *People v. Gayheart*, 285 Mich.App. 202, 776 N.W.2d 330, 338 (2009)

The record reveals that around December 2010, Defendant and Woodruff moved from Harrison, Arkansas, to Seymour, Missouri. Following this move, Mother arranged for Woodruff to continue to babysit Victim periodically. To facilitate this arrangement, Woodruff, accompanied by Defendant on one occasion, would pick up Victim in Arkansas and then drive her to their home in Missouri. The period of this arrangement lasted from December 2010 through February 2011, which encompasses the time period specified in the felony information. Before February 2011, Victim had "loved" going to Woodruff's home. Her disposition regarding babysitting, however, suddenly and dramatically turned negative. Within about three months after this marked change in attitude, Victim disclosed the alleged crimes, specifically implicating Defendant.

Defendant takes issue with the State's evidence, arguing that it was "circumstantial" and that the State "was unable to provide any definitive proof" that Defendant committed the alleged crimes in Missouri. Defendant attempts to underscore this argument by highlighting evidence that Woodruff babysat Victim for almost two years while living in Arkansas with Defendant, that Mother testified that the alleged offenses "could have" occurred in Arkansas, that Steiner testified that it was not unusual for victims of sexual abuse to delay their disclosure of the abuse, and that Mother testified she did not know whether Defendant was at home with Woodruff during the periods when Woodruff babysat Victim in Missouri.

 Defendant, however, directs us to no authority stating that jurisdiction must be shown by direct evidence or "definitive proof," whatever that may be. To the contrary, the general rule is that "[t]he State may prove its case by presenting either direct or circumstantial evidence connecting the defendant to each element of the crime." *State v. Jones*, 296 S.W.3d 506, 509 (Mo.App.2009). Upon appellate review, "[c]ircumstantial evidence is afforded the same weight as direct evidence." *State v. Hutchison*, 957 S.W.2d 757, 767 (Mo. banc 1997). "A verdict is not flawed because it was based on circumstantial evidence or because that circumstantial evidence failed to exclude every reasonable theory of innocence." *State v. Middlemist*, 319 S.W.3d 531, 537 (Mo.App. 2010). Here, jurisdiction is not, strictly speaking, an element of statutory sodomy. *See* section 566.062.[7] Defendant, however, has not cited us to any legal authority supporting the notion that proof of jurisdiction requires any greater evidentiary basis than that required to prove an element of the offense. Because circumstantial evidence may provide a sufficient evidentiary basis for proving an element of the offense, we see no reason why it cannot provide a sufficient evidentiary basis to support a finding of jurisdiction.

 In the instant case, the State adduced sufficient circumstantial evidence for a reasonable fact-finder to reasonably infer and thereby conclude beyond a reasonable doubt that the alleged crimes occurred in Missouri. Defendant's arguments that the alleged crimes "could have" occurred in Arkansas rather than in Missouri are speculative and contrary to our standard of review, *supra*, in that they rely upon evidence and inferences contrary to

(collecting cases); *see also* Wayne R. LaFave, et al., Criminal Procedure 16.4(d) (3d ed.2007).

7. Statutory sodomy in the first degree is composed of the following statutory elements: (1) deviate sexual intercourse (2) with another person who is less than fourteen years old. *State v. Brown*, 58 S.W.3d 649, 655 (Mo.App. 2001).

the trial court's judgment. *State v. Niederstadt*, 66 S.W.3d 12, 14 (Mo. banc 2002); *State v. McCleod*, 186 S.W.3d 439, 443 (Mo.App.2006). Defendant's first point is denied.

### Corroboration Rule Does Not Apply

In his second point, Defendant contends that the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence, in that

the State failed [to] present evidence that would prove beyond a reasonable doubt that [Defendant] touched [Victim] in her vagina and anus with his finger because[Victim]'s statements regarding where she was touched were so inconsistent that her testimony alone was not sufficient to support convictions for two counts of statutory sodomy in the first degree.

█ "When reviewing a motion for judgment of acquittal, we apply the same standard of review as the standard used in reviewing a challenge to the sufficiency of the evidence." *State v. McQuary*, 173 S.W.3d 663, 666–67 (Mo.App.2005).

█ Defendant acknowledges that, as a general rule, " '[t]he uncorroborated testimony of the victim in a case of sexual assault is sufficient to sustain a conviction.' " *State v. Waddell*, 164 S.W.3d 550, 553 (Mo.App.2005) (quoting *State v. Sladek*, 835 S.W.2d 308, 310 (Mo. banc 1992)). However, Defendant urges that corroboration of Victim's testimony was required in this case. He notes that whereas Victim's out-of-court statements to her mother and Steiner reveal that Defendant touched her in two places (her "peepee" and "butt"), Victim "changed her story" when she testified at trial that Defendant touched only her "peepee." Defendant cites *Waddell* for the proposition that corroboration is required when "the victim's testimony is contradictory and in conflict with physical facts, surrounding circumstances and common experience, that its validity is thereby rendered doubtful." 164 S.W.3d at 553. Citing *State v. Gatewood*, Defendant notes that "[t]he discrepancies must amount to 'gross inconsistencies' and contradictions and must relate directly to an essential element of the case." 965 S.W.2d 852, 856 (Mo.App.1998).

█ After correctly citing the above general principles, Defendant urges us to invoke and apply the corroboration rule here. Defendant ignores, however, that both *Waddell* and *Gatewood*—the only cases cited by Defendant in support of his argument—declined to apply the corroboration rule where the challenged inconsistencies were between a witness's trial testimony and the witness's out-of-court statements.[8] *Waddell*, 164 S.W.3d at 553–54; *Gatewood*, 965 S.W.2d at 857. " '[T]he corroboration rule ... *does not apply to conflicts between the victim's trial testimony and the victim's out-of-court statements.*' " *Waddell*, 164 S.W.3d at 553 (quoting *State v. Paxton*, 140 S.W.3d 226, 230 (Mo.App.2004) (emphasis added in *Waddell*)).

█ Here, the discrepancies were between Victim's testimony regarding where Defendant touched her and her out-of-court statements to her mother and Steiner. The corroboration rule does not apply in this context. *See Waddell*, 164 S.W.3d at 553–54; *Gatewood*, 965 S.W.2d at 857. Any inconsistencies between these statements were " 'for the ... trier of fact to

8. The repeated and continued disregard of this qualification to the corroboration rule by defendants urging its application in case after case where it does not apply buttresses our recent observation that the rule is "often asserted but seldom supported[.]" *State v. Shinn*, 420 S.W.3d 619, 626 (Mo.App.2013).

reconcile and consider when judging the witness's credibility.'" *Waddell,* 164 S.W.3d at 553 (quoting *State v. Paxton,* 140 S.W.3d 226, 230 (Mo.App.2004)). The trial court was free to "believe all, some, or none of the testimony of [Victim] when considered with the facts, circumstances, and other testimony in the case." *Jeffrey,* 400 S.W.3d at 313. Defendant's second point is denied.

### Decision

The trial court's judgment of conviction is affirmed.

JEFFREY W. BATES, P.J. and MARY W. SHEFFIELD, J., concur.