

# In the Missouri Court of Appeals
# Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED101370 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | |
| | ) | |
| DAVID BENNISH, | ) | Honorable Jack Garvey |
| | ) | |
| Respondent. | ) | Filed: October 20, 2015 |

## I.     INTRODUCTION

David Bennish ("Defendant") appeals the judgment of the Circuit Court of the City of St. Louis convicting him of three counts of statutory sodomy in the second degree, in violation of section 566.064, RSMo (2000),[1] one count of endangering the welfare of a child in the first degree, in violation of section 568.045, and one count of incest, in violation of section 568.020. Defendant asserts three points on appeal. In his first two points, Defendant contends the trial court plainly erred in excluding testimony from two witnesses, Frank and Betty Bennish, regarding victim D.R.'s truthfulness. In Defendant's third point, he argues the trial court erred in denying Defendant's motions for acquittal at the close of the State's evidence and at the close of all evidence.  We affirm the trial court's judgment.

---

[1] All statutory references are to RSMo (2000) as supplemented unless otherwise indicated.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Viewed in a light most favorable to the verdict, the evidence adduced at trial revealed the following: Defendant's daughter, D.R., was born on October 23, 1996.  During kindergarten, D.R. moved in with her paternal grandfather and step-grandmother, Frank and Betty Bennish,[2] and their daughter, A.B.  The Bennish's home was located in the City of St. Louis.  Defendant did not live with them.

When D.R. was thirteen or fourteen years old, she went swimming at the home of Defendant's friend, Raymond Williams.  Williams lived one or two blocks away from Frank and Betty Bennish in the City of St. Louis. After she went swimming, D.R. was in the bathroom changing.  Defendant came in and performed anal intercourse on her.

On another occasion, Defendant was staying at Frank and Betty's home to watch D.R. while his father and stepmother were out of town. Defendant entered D.R.'s bedroom and performed anal intercourse on her.

A third incident took place when D.R. was riding with Defendant in his van. The van was stopped at a light and Defendant pulled D.R.'s head down to his penis and forced her to perform oral sex on him. After the light changed, the van started moving again and D.R. raised her head up, leaned out the window and spit.

In October of 2011, an investigator from the Department of Child Services was sent to investigate an allegation that A.B. had been abused at school. The investigator spoke to A.B. and then spoke with D.R., who disclosed the abuse by Defendant.  Defendant was formally charged with six counts of various sexual crimes against D.R.   At trial, the State presented D.R.'s

---

[2] Throughout the opinion, we often refer to Frank and Betty Bennish only by their first names. We intend no disrespect to either individual, but because they share the same last name, we utilize the first to avoid repetition and for the ease of understanding.

testimony.  She recounted the two incidents of anal sodomy.  She also testified to the third incident in Defendant's van. D.R. was unable to remember exactly where the van was located when the incident occurred.

Frank Bennish testified as a witness for the defense. Frank explained that he generally only interacted with D.R. on weekends because he was gone most of the week as an over-the-road trucker. Defense counsel then questioned Frank about D.R.'s reputation for honesty.  The State objected and the court sustained its objection.  Defendant did not make an offer of proof.

The defense also presented the testimony of Betty Bennish.  Defense counsel asked her about D.R.'s reputation for truthfulness. Betty stated D.R. "liked to tell stories occasionally" and then she began to describe a specific instance where D.R. was untruthful.  The State made an objection which the court sustained.  Again, Defendant did not make a detailed offer of proof, but did include the issue in his motion for new trial.

After deliberations, the jury found Defendant guilty of three counts of statutory sodomy in the second degree, one count of endangering the welfare of a child in the first degree, and one count of incest.[3]

Defendant waived jury sentencing prior to trial. The court sentenced him to a total of fifteen years' imprisonment. The sentence consisted of consecutive terms of seven years' imprisonment on two of the counts of statutory sodomy in the second degree and one year's imprisonment on the third count of statutory sodomy in the second degree, and concurrent terms of seven years' imprisonment for endangering the welfare of a child in the first degree and four years' imprisonment for incest.  Defendant appeals.

---

[3] One count was subject to a directed verdict.

### III.   DISCUSSION

### A.  POINTS I AND II

We will address Defendant's first two points on appeal together as they involve common questions of law.  In his first and second points, Defendant asserts the trial court abused its discretion in sustaining the State's objections and refusing to allow Frank and Betty Bennish to testify regarding D.R's character for truthfulness as well as her specific acts of untruthfulness in the past.  We disagree.

As with any witness who testifies at trial, a victim in a sex offense case places her reputation for truthfulness at issue by taking the stand, and the defense may impeach the victim's testimony by evidence of her poor reputation for truthfulness and veracity. *State v. Smith*, 314 S.W.3d 802, 810 (Mo. App. E.D. 2010) (citing  *State v. Trimble,* 638 S.W.2d 726, 735 (Mo. banc 1982)).  The testimony of a character witness may be offered to show the victim has a poor community reputation for truthfulness and veracity.  *See State v. Durham*, 371 S.W.3d 30, 36 (Mo. App. E.D. 2012).

A person is qualified to testify as to another witness's reputation for truthfulness and veracity if it is shown that the person is familiar with "the general reputation of the witness in the neighborhood or among the people with whom the witness associates . . . ." *Smith,* 314 S.W.3d at 810 (quotation omitted).  In particular, the witness providing character testimony "must have had an opportunity to observe continuously and with some frequency the person whose reputation he describes; and the witness must have knowledge of how others in the community view the individual." *Cantrell v. Superior Loan Corp.*, 603 S.W.2d 627, 639 (Mo. App. E.D. 1980).

"Conversely, it is irrelevant what the person personally knows of the general conduct of the witness to be impeached because personal opinion as to a witness's truthfulness and veracity

is immaterial and not admissible." *Smith,* 314 S.W.3d at 810 (citing *State v. Schell,* 843 S.W.2d 382, 384 (Mo. App. E.D. 1992)). Moreover, a witness called to testify as to another witness's character for truthfulness and veracity may typically only provide testimony regarding general reputation in the community and not testimony of specific acts. *Durham*, 371 S.W.3d at 36.

Frank Bennish testified he generally only interacted with D.R. on weekends because he was gone during the week. Defense counsel then asked him the following:

> DEFENSE COUNSEL: And what was [D.R.]'s reputation within your household for being honest and telling the truth?
> THE STATE: Objection, foundation.
> THE COURT: Sustained.

Defendant did not make an offer of proof. Defendant's counsel then asked Frank his involvement in the day-to-day life of D.R. Frank responded that "[o]ccasionally [he] would have a little bit to do with [D.R.]."

Betty Bennish also testified for the defense. She stated that she was around D.R. nearly all of the time that D.R. was not in school. The following exchange then occurred:

> DEFENSE COUNSEL: All right. And in these years with her living under your roof, the daily speaking with — or seeing her, daily speaking with her, knowing her well, in all of your opportunities to observe and witness, what would you say – what is – what is – what is [D.R.]'s reputation, from what you've learned, about her truthfulness?
> THE STATE: Objection, foundation.
> THE COURT: Overruled.
> DEFENSE COUNSEL: You can go ahead and answer.
> A. She liked – she liked to tell stories occasionally when she didn't want to do something to get out from doing things that she didn't want to do. For instance, she would tell me at one point she –
> THE STATE: Objection, this –
> THE COURT: Sustained.
> DEFENSE COUNSEL: So –
> THE COURT: Limited on this type of inquiry.
> . . .
>
> DEFENSE COUNSEL: And, in your interactions, what things would you have learned from observing [D.R.], or would you see her exhibit if you believed her not being truthful?

THE STATE: Objection.
THE COURT: Sustained.

Defendant did not make an offer of proof.

At the outset, we will address whether Defendant's first two claims of error were properly preserved for appeal. Once the State's motions and objections to the testimony were sustained, it was necessary for Defendant to make an offer of proof to adequately preserve the issue for review. *See Anderson v. Wittmeyer,* 895 S.W.2d 595, 601 (Mo. App. W.D. 1995); *Smith*, 314 S.W.3d at 811. An offer of proof must be made at the time of the objection and show: (1) what the evidence will be; (2) its purpose and object; and (3) all facts necessary to establish admissibility. *Id.* When proffered evidence is denied admission, relevancy and materiality must be shown by specific, sufficiently detailed facts to establish admissibility by the offering party in order to properly preserve the issue for appellate review. *Id.* Because Defendant failed to make the necessary offers of proof, we find his claims are unpreserved.

We review unpreserved claims only for plain error. *Smith*, 314 S.W.3d at 811 (citing *State v. Washington,* 260 S.W.3d 875, 879 (Mo. App. E.D. 2008)). Plain error review involves two steps: (1) the trial court must have committed "evident, obvious and clear error that affected substantial rights"; and (2) the error resulted in "manifest injustice or a miscarriage of justice." *Smith*, 314 S.W.3d at 811 (citing *Washington,* 260 S.W.3d at 879).

Here, we find no "evident, obvious and clear error" by the trial court in sustaining the State's objections. No evidence was presented that Frank Bennish was familiar with D.R's reputation for truthfulness in the community. His testimony revealed he was home mainly on the weekends, and occasionally had "a little bit" to do with D.R. Thus, Defendant did not establish the necessary foundation−that Frank had the opportunity to observe D.R. continuously and had knowledge of how others in the community viewed her. Accordingly, the trial court did not err

6

in sustaining the State's objection as Frank Bennish was not qualified to testify as to D.R's reputation for truthfulness.

Likewise, we find no clear error by the trial court in excluding Betty Bennish's testimony. Although she was permitted to testify as to D.R.'s reputation for truthfulness, the trial court sustained the State's objection when she began to describe her personal knowledge of an instance where D.R. "[told] stories." The trial court properly excluded this evidence as Betty's personal knowledge of D.R.'s character for truthfulness and veracity was irrelevant and inadmissible. *See Smith,* 314 S.W.3d at 810.

Furthermore, impeaching a witness's character for truthfulness with evidence of specific acts is typically impermissible. *Durham*, 371 S.W.3d at 36. Nevertheless, Defendant maintains Betty should have been permitted to testify regarding D.R.'s specific act of untruthfulness as it was highly relevant to her credibility and essential to his defense. Defendant, however, failed to make an offer of proof, detailing the exact nature of the testimony Betty would have provided and specifically demonstrating its relevance and materiality. Moreover, the record merely reflects Betty stated that D.R. told stories to "get out from doing things that she didn't want to do." Then, she tried to offer a specific instance of this type of behavior. It is not readily apparent to us that D.R telling a story to avoid doing something−such as a chore or school work−would be highly probative of whether she told the truth about being sexually abused by her father to an investigator.

Based on the record we have before us and the absence of an offer of proof, we cannot conclude the trial court committed evident, obvious and clear error in sustaining the State's objections. The trial court did not plainly err in excluding Frank and Betty Bennish's testimony. Points I and II are denied.

7

**B. POINT III**

In his third point on appeal, Defendant argues the trial court erred in denying his motions for judgment of acquittal at the close of the State's evidence and the close of all evidence. Specifically, Defendant contends the State failed to prove beyond a reasonable doubt that he committed statutory sodomy under Count III within the State of Missouri. Under Count III, Defendant allegedly subjected D.R. to deviate sexual intercourse in a van. Defendant maintains the State elicited no evidence the van was located in Missouri at the time of the offense. The State responds that it presented sufficient circumstantial evidence to permit the jury to reasonably infer the crime occurred in Missouri. We agree.

We review the denial of a motion for judgment of acquittal under the same standard of review used in reviewing a challenge to the sufficiency of the evidence to support a jury's guilty verdict. *State v. Abbott*, 412 S.W.3d 923, 927 (Mo. App. S.D. 2013). In reviewing a challenge to the sufficiency of the evidence, this Court must determine whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt. *State v. Belton,* 153 S.W.3d 307, 309 (Mo. banc 2005). We view the evidence and all reasonable inferences therefrom in the light most favorable to the verdict, disregarding evidence and inferences contrary to the jury's verdict. *Id.* Evidence is sufficient if any reasonable inference supports guilt, even if other equally valid inferences do not. *State v. Breedlove,* 348 S.W.3d 810, 814 (Mo. App. S.D. 2011).

Count III of the amended information alleged Defendant committed the offense of statutory sodomy in the second degree in the City of St. Louis when he had deviate sexual intercourse with D.R. in a vehicle located near a 711 convenience store. In order for Missouri to have jurisdiction over an offense, some part of the criminal transaction must have occurred

8

within the geographical boundaries of Missouri. *State v. Kleen*, 491 S.W.2d 244, 245 (Mo. 1973).

Defendant argues the State must prove jurisdiction in Missouri beyond a reasonable doubt. However, the standard of proof necessary to establish jurisdiction in a criminal case in Missouri has not yet been resolved definitively. *See State v. Williams*, 455 S.W.3d 1, 6-7 (Mo. App. S.D. 2013). We need not decide at this time what the applicable standard of proof is, in that we find the evidence adduced was sufficient under the highest standard−beyond a reasonable doubt−to establish Missouri has jurisdiction.

The record reveals Defendant forced D.R. to perform oral sex on him while they were stopped at a light in his van. D.R. testified the oral sex ended when the light turned green and Defendant drove off. D.R. also testified she did not know if the incident occurred reasonably close to her grandparents' house and she did not remember where they were going in the van.

Defendant takes issue with this evidence, arguing the State did not meet its burden to show where the van was at the time of the alleged offense. The State, however, may prove its case by presenting either direct or circumstantial evidence connecting the defendant to each element of the crime. *State v. Jones*, 296 S.W.3d 506, 509 (Mo. App. E.D. 2009). Circumstantial evidence is given the same weight as direct evidence and the jury is free to make reasonable inferences from the evidence presented. *Id.*

Here, the State adduced sufficient circumstantial evidence for a reasonable factfinder to infer and thereby conclude beyond a reasonable doubt that the alleged crime occurred in Missouri. At trial, D.R. testified about three separate allegations of abuse, including when Defendant forced her to perform oral sex on him in his van. The other two incidents occurred during a similar time frame at homes located within blocks of each other in St. Louis. There is

9

no evidence D.R. or the Defendant lived anywhere other than Missouri. In the light most favorable to the verdict, the jury could have reasonably inferred the incident in the van also occurred within Missouri.

Additionally, even though D.R. could not remember where they were going when the crime occurred, a jury could reasonably infer that it was an everyday, routine drive in the City of St. Louis as opposed to an out-of-the ordinary trip to another State.  Further, no evidence was presented at trial that D.R. and Defendant left Missouri together.  Moreover, even assuming an inference the crime occurred outside of Missouri is equally valid, this inference is contrary to our standard of review as it is unfavorable to the verdict.  Accordingly, the trial court did not err in denying Defendant's motions for judgments of acquittal as we find sufficient evidence to infer beyond a reasonable doubt the crime occurred in Missouri.  Point III is denied.

## IV.    CONCLUSION

We affirm the judgment of the trial court.


_____
Angela T. Quigless, Judge

Philip M. Hess, P.J., and
Gary M. Gaertner, Jr, J., Concurs.