

# Missouri Court of Appeals

## Southern District

### Division One

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. SD36523 |
| | ) | Filed: March 8, 2021 |
| ROBERT LEE YOUNG, | ) | |
| | ) | |
| Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Charles D. Curless, Senior Judge

**<u>AFFIRMED</u>**

Robert Lee Young ("Young") appeals his convictions, following a jury trial, of one count of first-degree robbery and one count of armed criminal action. In two points on appeal, Young argues: (1) the trial court abused its discretion in failing to ensure Young was discretely shackled during trial; and (2) overruling his motion for change of venue. Finding no merit to either of Young's points, we deny the same and affirm the judgment of the trial court.

**Facts and Procedural History**

Young does not challenge the sufficiency of the evidence to support his convictions. We recite the evidence and the reasonable available inferences therefrom in the light most favorable to the verdict. *State v. Lammers*, 479 S.W.3d 624, 630 (Mo. banc 2016). We recite other information as necessary for context.

On June 21, 2018, Victim, a Greene County assistant prosecutor, was riding in an elevator at her office building when Young got on, displayed a knife, and announced, "This is a robbery." Victim gave Young approximately $50 in cash. Young complained it was not "enough money" and demanded Victim give him her wedding ring, which she did.

Thereafter, Young got off the elevator, but made sure Victim stayed on. Victim then rode the elevator to her office floor and police were called.

Police found Young, who matched the description Victim had given, a short time later at a nearby bus stop. After the arresting officer detained him, Young admitted he was carrying a knife. Young had $20 in cash, a grocery store receipt showing a cash purchase of $43, and Victim's wedding ring in his pants pocket. Young was *Mirandized*[1] and interviewed, where he admitted that he had taken Victim's money and ring.

Young was charged, by "Indictment," with the class A felony of robbery in the first degree (Count I), pursuant to section 570.023, occurring on June 21, 2018; felony armed criminal action (Count II), pursuant to section 571.015, occurring on June 21, 2018; class A felony of robbery in the first degree (Count III), pursuant to section 570.023, occurring on June 9, 2018; and felony armed criminal action (Count IV), pursuant to section 571.015, occurring on June 9, 2018.[2]

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] References to section 570.023 are to RSMo Cum.Supp. 2014; references to section 571.015 are to RSMo 2000.

At his arraignment on July 27, 2018, Young entered a not guilty plea to the charges. On August 6, 2018, Young filed a *pro se* motion for change of judge and change of venue, pursuant to Rules 32.03 and 32.07.[3] On August 29, 2018, a senior judge was assigned to Young's case.

On November 5, 2018, Young filed a second *pro se* motion for change of judge and change of venue, again relying on Rules 32.03 and 32.07.

On February 20, 2019, the trial court disqualified the Greene County Prosecutor's Office from prosecuting the case, and appointed the Attorney General's Office.

A hearing was held on October 16, 2019, after which Young's motions for change of judge and change of venue were denied. Following the hearing, the trial court also sustained the State's motion to file a substitute indictment that charged Young as a prior and persistent offender.

Young's jury trial on Counts I and II was held on November 5 and 6, 2019.[4] During pre-trial discussions that morning, the trial court addressed the subject of Young wearing physical restraints during the trial because of safety concerns and threats Young had made:

> [DEFENSE COUNSEL]: [W]e both were just discussing something, but I don't think it includes Mr. Young.
>
> THE COURT: And it's in regard to the restraints due to -- in part to prior contact in court by you and some things that I've been hearing about recently, those are going to stay on.
>
> And I don't want the jury to be distracted by them or see them a lot, or, you know -- when they come in or out or I come in and out or when everybody else stands up, you don't need to. You can remain seated and so, the jury's not seeing what's all the jewelry that you're wearing.
>
> And also, your conduct in the courtroom will determine whether you stay in the courtroom or not. If we get -- if you get any outbursts or anything like that, which I know that you're prone to, I'm just not going to tolerate it. So if you have

---

[3] All rule references are to Missouri Court Rules (2018).

[4] Counts III and IV were dismissed by the State on July 24, 2018.

anything to say, you can say it to your lawyer discreetly so that everybody doesn't hear it.  And other than that, just behave yourself.

Do you understand what I'm telling you?

[YOUNG]:  I thought of what you're saying right, but if -- if, you know, just like I do, if there's something ain't being said that supposed to be right Man, I still can't say nothing, can't voice it here?

THE COURT:  You can say it to your lawyer.  If you don't -- you don't make objections, your lawyer makes objections.  Then you don't argue, your lawyer argues.

[YOUNG]:  All right.  So then I need to do a little shorthand, I need to take some notes.  So now you've got these restraints right on me, Man.  I can't do -- I'm left-handed, I can't do no writing.

THE COURT:  Well, sorry about that.

[YOUNG]:  You feel that's right too?  I mean, when I can't question --

THE COURT:  I think it's appropriate --

[YOUNG]:  -- when I have questions that needs to be addressed --

THE COURT:  -- so.

[YOUNG]:  -- that I can't write them down?

THE COURT:  You can write it down or you can't write  -- but that's  -- those are the rules of the game today, so I just wanted you to know it.  I didn't want to talk to you in front of the jurors.  I don't want to prejudice them against you or anyone else for that matter.  That's what we're going to do so.

Young was brought into the courtroom in street clothes, leg shackles, a belly restraint, and handcuffs.

Also during pre-trial, defense counsel made an oral motion to "renew" Young's motion for change of venue, arguing that the venire panel might be familiar with Victim because she was a Greene County assistant prosecutor and because a jury pool drawn from Greene County would

4

"embrace" law enforcement and would give Victim's testimony "more credibility." The trial court overruled the motion.

The prosecutor reminded the venire panel during jury selection that Young was "presumed innocent"; no one expressed any disagreement with that proposition. Young's counsel asked the venire panel whether "anyone here who when came into the courtroom looked at my client and thought, I wonder what he did?" Venireperson No. 36 replied, "He's sitting in handcuffs right now and he's supposed to be innocent." Venirepersons No. 7, 13, 22, 23, 27, 42, 43, 45, 47 and 54, all agreed with this statement.

Young's counsel was in the process of asking the venire panel whether they could follow an instruction to presume Young was innocent despite seeing him in restraints, when the trial court asked the attorneys to approach the bench. At the trial court's suggestion, and with the consent of both defense counsel and prosecutor, the trial court gave a curative instruction to the jury regarding Young's restraints.

None of the venire persons who expressed concern about Young's restraints were selected to serve on the jury.

Young did not testify. The jury found Young guilty as charged on Counts I and II.

On December 1, 2019, Young filed his "Motion for Judgement [sic] of Acquittal or in the Alternative a New Trial." After a hearing, the trial court denied Young's motion.

The trial court sentenced Young to consecutive sentences of 30 years on Count I, and 40 years on Count II. This appeal followed.

In two points relied on, Young argues:

1.    The trial court "abused its discretion in failing to ensure Mr. Young was discretely shackled and failing to grant a new trial after the fact of Mr. Young's obviously visible restraints was noted by numerous venirepersons during *voir dire*[,]" and "Mr. Young was restrained in visible handcuffs, belly chain, and shackles

throughout the entirety of trial," as "the trial court told the jury it was its decision to shackle Mr. Young, and where the record is insufficient to show that the trial court's security interests . . . were either valid or compelling enough to be accomplished without less restrictive and less conspicuous means," in that "venirepersons' protestations tainted the entire venire, and because he was charged with dangerous felonies and his theory of defense was that he had no intent to take property from [Victim] by force or threat of force, Mr. Young was prejudiced by being visibly chained throughout trial."

2.      The trial court "abused its discretion in overruling Mr. Young's motion for change of venue and proceeding to trial in Greene County[,]" in that Victim was "a veteran Greene County prosecutor," and "Mr. Young was charged with robbing [Victim] in an elevator within the building housing the Greene County prosecutor's offices[,]" and "where the Greene County prosecutor's office is a public entity whose head is elected by the citizens of Greene County, the appearance of public support for the alleged victim in this case tainted the Greene County jury pool and Mr. Young showed good cause to change venue pursuant to Rule 32.04."

**Analysis**

***Point I: Restraints***

In his first point, Young argues the trial court abused its discretion in "failing to ensure Mr. Young was discretely shackled and failing to grant a new trial after the fact of Mr. Young's obviously visible restraints was noted by numerous venirepersons during *voir dire*[.]"

> Given the presence of similarly weighty considerations, we must conclude that courts cannot routinely place defendants in shackles or other physical restraints visible to the jury . . . . The constitutional requirement, however, is not absolute. It permits a judge, in the exercise of his or her discretion, to take account of special circumstances, including security concerns, that may call for shackling. In so doing, it accommodates the important need to protect the courtroom and its occupants. But any such determination must be case specific; that is to say, it should reflect particular concerns, say, special security needs or escape risks, related to the defendant on trial.

*Deck v. Missouri*, 544 U.S. 622, 633, 125 S.Ct. 2007, 2014–15, 161 L.Ed.2d 953 (2005). "It is undisputed that a defendant has the right to appear before a jury unfettered unless good cause is shown." *State v. Snowden*, 285 S.W.3d 810, 814 (Mo.App. S.D. 2009) (internal quotation and citation omitted).

6

Here, the record demonstrates that the trial court properly exercised its discretion to impose physical restraints on Young's person during the trial in light of specific and particular security issues associated with Young.

Young's jury trial on Counts I and II was held on November 5 and 6, 2019. The following docket entry regarding Young's restraints was entered:

> Discussion among the Court and all counsel on the (recording) record conducted at Defendant's atty's request regarding restraint of Defendant. Defendant brought into Courtroom in street clothes. Court admonishes Defendant regarding behavior in Court.

During defense counsel's questioning in voir dire, one member of the venire panel observed: "[Young]'s sitting in handcuffs right now and he's supposed to be innocent." Defense counsel developed this line of inquiry with some other members of the venire panel, who largely agreed with the first comment. The following colloquy then occurred:

> [DEFENSE COUNSEL]: And if the judge instructs you before you retire -- if you're selected for the jury, and the judge instructs you that despite the way my client looks, including his shackles, that you have to presume that he is innocent today, do you feel that you could follow that instruction?
>
> VENIREPERSON []: Yes.
>
> THE COURT: [Defense counsel].
>
> [DEFENSE COUNSEL]: Yes, Judge.
>
> THE COURT: [Prosecutor]. Approach please.
>
> **OUTSIDE THE PRESENCE OF THE JURY**:
>
> THE COURT: Along this line of questioning, I think it might be best for right now for me to instruct the panel that I am the one. It has nothing to do with the State or any bailiffs or anybody that they're not -- that they're not afraid of him, that I instructed them to put the cuffs on. And I think that might -- I don't want everybody maybe give a bunch of answers that point -- that poison voir dire.
>
> [DEFENSE COUNSEL]: *That's my point*.

7

[PROSECUTOR]: And that would be my concern, Your Honor, poisoning the pool.

[DEFENSE COUNSEL]: *I would think that an instruction from the Court would be appropriate to help so we don't poison the panel.*

THE COURT: Yeah. Okay.

[PROSECUTOR]: Thank you, Judge.

**PROCEEDINGS RETURNED TO OPEN COURT**:

THE COURT: Ladies and gentlemen, counsel and I have discussed this. I want to instruct the panel on this, on the issue of Mr. Young's attire. I asked that he be restrained. It doesn't have anything to do with the State being afraid of Mr. Young or his lawyer or the bailiffs or anybody else. This was entirely my decision to do that. So I figured there were probably a lot of questions among the panel, and just so everyone knows, I am the one who instructed that so. Okay.

All right. Go ahead, [Defense Counsel].

[DEFENSE COUNSEL]: Thank you, Your Honor.

(Emphasis added).

None of the venire members who expressed concern about Young's restraints were selected to serve on the jury.

On the morning of the second day of trial, the prosecutor asked to make a record about Young's shackling due to courtroom safety. The following colloquy then took place:

[PROSECUTOR]: Your Honor, the State wants to make a quick record about the jury selection process and the defendant's shackling due to courtroom safety. I assume we are operating under the same parameters as yesterday for defendant's shackling status because of his behavior in previous appearances before this Court.

THE COURT: Well, and also because of the threats made just prior to trial.

[PROSECUTOR]: Correct. Yes, the threats made to his previous attorney involved with this case.

8

Additionally, Judge I, wanted to make -- for the record, I wanted to note that the State, in its preemptory strikes, struck all of the jurors that agreed with, I think it was Juror No. 36 about the defendant's custody status. I think during the jury selection Juror No. 36 made some comments about the defendant being in shackles, and it was a very prominent comment, very public comment to the rest of the panel. And the State used its preemptories on all of those people that agreed with Juror No. 36. Additionally, one other thing I wanted to address is, if the defendant is going to testify, my recommendation, since he is in shackles, would be to have him in the witness box and then bring the jury in. That way they don't see him moving in shackles from the counsel table to the witness box.

THE COURT: Are you okay with that, [Defense Counsel]?

[DEFENSE COUNSEL]: Judge, yes, I concur with all the statements to the Court. I do recall that it was Juror No. 36 that made some comments about the shackles and the presumption of innocence. But I do think that each of the jurors that indicated that they agreed with him were all questioned appropriately regarding their ability to disregard any indication of shackling. And so, I would agree with the State on that matter.

And I also agree that it would be appropriate just to have him sitting in the witness stand when the jury comes in to lessen the effect of the shackles.

THE COURT: We'll do that. And also I noted yesterday that most of the people, not all of them, but most of the people that agreed with Mr. 36 were rehabilitated as well, but nonetheless they're gone, right?

[PROSECUTOR]: Right.

[DEFENSE COUNSEL]: Yes, Judge.

THE COURT: Okay. Well -- and I have had written an order that Mr. Young be brought over in civilian clothing. So we'll see how long that takes.

[PROSECUTOR] : Well, we have nothing further for the record at this time, Judge.

The record before us contains no objection to the use of shackles. This point is not preserved. The trial court did not abuse its discretion with respect to the restraints it required Young to wear during the underlying jury trial. Point I is denied.

9

## *Point II: Venue*

Young's second point argues that the trial court abused its discretion in rejecting his "motion for change of venue and proceeding to trial in Greene County[,]" in that "Young showed good cause to change venue pursuant to Rule 32.04."

As relevant here, Young filed two *pro se* motions, each requesting change of judge and change of venue pursuant to "Missouri Supreme Court Rules *32.03* and *32.07*." (Emphasis added). The trial court overruled both motions before trial. In relevant part, Rule 32.03 relates to change of venue from "a county having seventy-five thousand or fewer inhabitants" (which would be inapplicable to Young's then pending criminal proceedings in Greene County), and Rule 32.07 relates to a party's change of judge upon a party's timely application (which Young does assert as part of his challenge in the instant appeal).

Rule 32.04 premises and governs Young's challenge, the substance of which he accurately recounts in his brief:

> Rule 32.04 provides that '[u]pon written application of the defendant, a change of venue may be ordered in any criminal proceeding triable by jury' where, *inter alia*, 'the inhabitants of the county are prejudiced against the defendant [or] that the state has an undue influence over the inhabitants of the county.' Rule 32.04(a) (2018).

Young candidly acknowledges that "[i]n this felony case, the application for change of venue 'must be filed **not later than ten days after the initial plea is entered**.' Rule 32.04(b)." (Emphasis added). His brief also correctly recounts that his "first [*pro se*] venue motion was timely[,]" as it was filed "on August 6, 2018, ten days after entering his initial plea of not guilty to the indictment[.]"

However, Young's timely *pro se* motion premised its request for relief on Rules 32.03 and 32.07, not Rule 32.04(a). The instant claim for change of venue, pursuant to Rule 34.04(a), was raised for the first time by defense counsel on the first day of Young's jury trial.

10

Change of venue is a "privilege that can be waived[,]" and once waived, the "venue objection is not reviewable[,]" even "for plain error." ***State v. Milcendeau***, 571 S.W.3d 178, 182 (Mo.App. S.D. 2019). A change-of-venue argument is "waived . . . if a defendant . . . fails to raise the issue before trial." ***State v. Williams***, 455 S.W.3d 1, 6 (Mo.App. S.D. 2013); *see **State v. Taylor***, 238 S.W.3d 145, 150 (Mo. banc 2007); ***Milcendeau***, 571 S.W.3d at 182. The only change-of-venue challenge Young timely raised was based on Rule 32.03, which was facially meritless.

Young's Rule 32.04(a) change of venue claim is waived, and his Point II is accordingly denied.

The judgment of the trial court is affirmed.

WILLIAM W. FRANCIS, JR., J. - OPINION AUTHOR

NANCY STEFFEN RAHMEYER, P.J. - CONCURS

JACK A.L. GOODMAN, J. - CONCURS

11